103 Cal.Rptr.2d 23 (2001)
24 Cal.4th 889
15 P.3d 243
The PEOPLE, Plaintiff and Respondent,
v.
Freddie Lee CROMER, Defendant and Appellant.
No. S076444.
Supreme Court of California.
January 22, 2001.
*24 William D. Farber, under appointment by the Supreme Court, San Rafael, for Defendant and Appellant.
Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Steven D. Matthews and Jennevee H. de Guzman, Deputy Attorneys General, for Plaintiff and Respondent.
KENNARD, J.
The confrontation clauses of both the federal and state Constitutions guarantee a criminal defendant the right to confront the prosecution's witnesses. (U.S. Const., 6th Amend.; Cal. Const, art. I, § 15.) That right is not absolute, however. An exception exists when a witness is unavailable and, at a previous court proceeding against the same defendant, has given testimony that was subject to cross-examination. Under federal constitutional law, such testimony is admissible if the prosecution shows it made "a good-faith effort" to obtain the presence of the witness at trial. (Barber v. Page (1968) 390 U.S. 719, 725, 88 S.Ct. 1318, 20 L.Ed.2d 255; accord, Ohio v. Roberts (1980) 448 U.S. 56, 74, 100 S.Ct. 2531, 2543, 65 L.Ed.2d 597.) California allows introduction of the witness's prior recorded testimony if the prosecution has used "reasonable diligence" (often referred to as due diligence) in its unsuccessful efforts to locate the missing witness. (Evid.Code, § 240, subd. (a)(5); all further statutory references are to the Evidence Code unless otherwise indicated.)
The issue here is this: What standard of review must an appellate court apply when evaluating a trial court's due diligence determination? This court's past decisions have given conflicting signals on the proper resolution of this issue, and these conflicting signals have caused or contributed to a conflict in the decisions of the Courts of Appeal. Having granted review to resolve that conflict, we now conclude that the proper standard is independent, de novo, review rather than the more deferential abuse of discretion test. Because the Court of Appeal correctly applied independent review in this case, we affirm its judgment.

I
A jury convicted defendant Freddie Lee Cromer of three counts of second degree robbery with personal use of a handgun, and the trial court sentenced him to 23 years in prison. Only the third count is of concern in this appeal. The evidence on that count showed the following.
On the evening of May 25, 1997, Courtney Culpepper was walking to her home when defendant hit her on the head with a gun while his companion took her purse. The two men ran away.
Culpepper identified defendant in a photo lineup and testified at defendant's preliminary hearing. When she failed to appear for the trial, the prosecution sought to introduce Culpepper's preliminary hearing testimony under the former-testimony exception to the hearsay rule. (§ 1291.) After a hearing, the trial court determined that the prosecution had used reasonable diligence in its unsuccessful attempt to secure Culpepper's attendance at trial, and the court allowed the prosecution to read Culpepper's preliminary hearing testimony to the jury. This prior testimony was the only evidence presented in support of the third count.
*25 On appeal, defendant challenged the admission of Culpepper's preliminary hearing testimony on the ground that the prosecution had not used reasonable diligence to locate her. The Court of Appeal agreed and reversed the conviction on the third count after an independent review of the trial court's reasonable diligence determination.
The People, through the Attorney General, petitioned for review on the sole issue of the appropriate standard for review of a trial court's due diligence determination.

II
The standards of review for questions of pure fact and pure law are well developed and settled. Trial courts and juries are better situated to resolve questions of fact, while appellate courts are more competent[1] to resolve questions of law. Traditionally, therefore, an appellate court reviews findings of fact under a deferential standard (substantial evidence under California law, clearly erroneous under federal law), but it reviews determinations of law under a nondeferential standard, which is independent or de novo review. (See People v. Lawler (1973) 9 Cal.3d 156, 160, 107 Cal.Rptr. 13, 507 P.2d 621.)
Selecting the proper standard of appellate review becomes more difficult when the trial court determination under review resolves a mixed question of law and fact. Mixed questions are those in which the "`historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the [relevant] statutory [or constitutional] standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated.'" (Ornelas v. United States (1996) 517 U.S. 690, 696-697, 116 S.Ct. 1657, 134 L.Ed.2d 911, quoting Pullman-Standard v. Swint (1982) 456 U.S. 273, 289, fn. 19, 102 S.Ct. 1781, 72 L.Ed.2d 66; see also Townsend v. Sain (1963) 372 U.S. 293, 309, fn. 6, 83 S.Ct. 745, 9 L.Ed.2d 770 ["mixed questions of fact and law ... require the application of a legal standard to the historical-fact determinations"].) The parties here agree, as do we, that the due diligence inquiry presents such a mixed question.
In its 1995-1996 term, the United States Supreme Court considered the appropriate standard for review of mixed question determinations in two cases in which the mixed question went to the heart of a federal constitutional right: Thompson v. Keohane (1995) 516 U.S. 99, 116 S.Ct. 457, 133 L.Ed.2d 383 (Thompson) (involving the Fifth Amendment right against self-incrimination), and Ornelas v. United States, supra, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (Ornelas) (involving the Fourth Amendment right against unreasonable searches and seizures). The high court concluded in both cases that appellate courts should use independent, de novo review, for the mixed question determinations that implicated these constitutional rights.
At issue in Thompson was whether the defendant was in custody during an interrogation for purposes of Miranda v. Arizona (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 and the Fifth Amendment to the federal Constitution. In the words of the high court: "Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person *26 have felt he or she was not at liberty to terminate the interrogation and leave. Once the scene is set and the players' lines and actions are reconstructed, the court must apply an objective test to resolve `the ultimate inquiry'.... [This] second inquiry ... calls for application of the controlling legal standard to the historical facts. This ultimate determination, we hold, presents a `mixed question of law and fact' qualifying for independent review." (Thompson, supra, 516 U.S. at pp. 112-113, 116 S.Ct. 457, fn. omitted.)
The high court in Thompson distinguished the mixed question before it from two other mixed questions to which it had applied a deferential standard of review: juror bias and competency to stand trial. The court explained: "[T]he trial court's superior capacity to resolve credibility issues is not dispositive of the `in custody' inquiry. Credibility determinations ... may sometimes contribute to the establishment of the historical facts and thus to identification of the `totality of the circumstances.' But the crucial question entails an evaluation made after determination of those circumstances: if encountered by a `reasonable person,' would the identified circumstances add up to custody as defined in Miranda? [Citations.] [¶] Unlike the voir dire of a juror [citation], or the determination of a defendant's competency [citation], which `take[s] place in open court on a full record,' [citation], the trial court does not have a first-person vantage on whether a defendant was `in custody' for Miranda purposes. [Citation.] Furthermore, in fathoming the state of mind of a potential juror or a defendant in order to answer the questions, `Is she free of bias?,' `Is he competent to stand trial?,' the trial court makes an individual-specific decision, one unlikely to have precedential value. In contrast, `in custody' determinations do guide future decisions." (Thompson, supra, 516 U.S. at pp. 113-114, 116 S.Ct. 457, fns. omitted.)
The Thompson court concluded its analysis with this observation: "Classifying `in custody' as a determination qualifying for independent review should serve legitimate law enforcement interests as effectively as it serves to ensure protection of the right against self-incrimination. As our decisions bear out, the law declaration aspect of independent review potentially may guide police, unify precedent, and stabilize the law ." (Thompson, supra, 516 U.S. at p. 115, 116 S.Ct. 457.)
In the same term, the high court decided Ornelas, in which it resolved a conflict among the federal circuit courts over the applicable standard of review of findings of reasonable suspicion and probable cause under the Fourth Amendment to the federal Constitution. After determination of the events leading up to the stop or search, the relevant legal inquiry there was "whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause." (Ornelas, supra, 517 U.S. at p. 696, 116 S.Ct. 1657.) Writing for the majority, consisting of eight of the nine justices, Chief Justice Rehnquist began by observing: "We have never, when reviewing a probable-cause or reasonable-suspicion determination ourselves, expressly deferred to the trial court's determination." (Id. at p. 697, 116 S.Ct. 1657.) He then explained why independent review of these constitutional questions was appropriate: "A policy of sweeping deference would permit, `[i]n the absence of any significant difference in the facts,' `the Fourth Amendment's incidence [to] tur[n] on whether different trial judges draw general conclusions that the facts are sufficient or insufficient to constitute probable cause.' [Citation.] Such varied results would be inconsistent with the idea of a unitary system of law. This, if a matter-of-course, would be unacceptable." (Ibid.)
Chief Justice Rehnquist further noted: "In addition, the legal rules for probable cause and reasonable suspicion acquire content only through application. Independent review is therefore necessary if *27 appellate courts are to maintain control of, and to clarify, the legal principles. See Miller v. Fenton, 474 U.S. 104, 114, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985) (where the `relevant legal principle can be given meaning only through its application to the particular circumstances of a case, the Court has been reluctant to give the trier of fact's conclusions presumptive force and, in so doing, strip a federal appellate court of its primary function as an expositor of law'), [¶] Finally, de novo review tends to unify precedent and will come closer to providing law enforcement officers with a defined `"set of rules...."'" (Ornelas, supra, 517 U.S. at p. 697, 116 S.Ct. 1657.)
With these decisions of the United States Supreme Court to guide us, we now turn to the constitutional right at issue here.

III
The constitutional right implicated here is the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." (U.S. Const., 6th Amend; Pointer v. Texas (1965) 380 U.S. 400, 406, 85 S.Ct. 1065, 13 L.Ed.2d 923 [holding this federal constitutional right enforceable in state court proceedings]; see also Cal. Const., art. I, § 15; Pen. Code, § 686.) This confrontation right seeks "to ensure that the defendant is able to conduct a `personal examination and cross-examination of the witness, in which [the defendant] has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.'" (People v. Louis (1986) 42 Cal.3d 969, 982, 232 Cal.Rptr. 110, 728 P.2d 180, quoting Mattox v. United States (1895) 156 U.S. 237, 242-243, 15 S.Ct. 337, 39 L.Ed. 409.) To deny or significantly diminish this right deprives a defendant of the essential means of testing the credibility of the prosecution's witnesses, thus calling "into question the ultimate `"integrity of the fact-finding process."'" (Chambers v. Mississippi (1973) 410 U.S. 284, 295, 93 S.Ct. 1038, 35 L.Ed.2d 297.)
Notwithstanding the importance of the confrontation right, it is not absolute. (Chambers v. Mississippi supra, 410 U.S. at p. 295, 93 S.Ct. 1038.) Traditionally, there has been "an exception to the confrontation requirement where a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant [and] which was subject to cross-examination...." (Barber v. Page, supra, 390 U.S. at p. 722, 88 S.Ct. 1318.) Before the prosecution can introduce testimony from a prior judicial proceeding, however, it "must ... demonstrate the unavailability of the witness. (Ohio v. Roberts, supra, 448 U.S. at p. 65, 100 S.Ct. 2531.) Generally, a witness is not unavailable for purposes of the right of confrontation "unless the prosecutorial authorities have made a good-faith effort to obtain [the witness's] presence at trial." (Barber v. Page, supra, 390 U.S. at p. 725, 88 S.Ct. 1318; accord, Ohio v. Roberts, supra, 448 U.S. at p. 74, 100 S.Ct. 2531.) (As we mentioned at the outset, and as we explain in detail later, under California law the prosecution must show reasonable or due diligence in locating the witness.)[2]
The United States Supreme Court has not yet addressed the precise question of the standard of review in evaluating a trial court's finding on the sufficiency of the prosecution's failed efforts to locate a missing witness. But in both Barber v. Page and Ohio v. Roberts, the two leading decisions in the area of hearsay and the confrontation clause, the high court undertook its own independent evaluation of whether *28 the prosecution had adequately established its good faith efforts to secure the presence of the missing witness and did not expressly defer to the lower courts' judgment as to the sufficiency or reasonableness of the prosecution's conduct. (Barber v. Page, supra, 390 U.S. at pp. 724-725, 88 S.Ct. 1318; Ohio v. Roberts, supra, 448 U.S. at pp. 74-77, 100 S.Ct. at pp. 2544-2545.)
Moreover, just last year in Lilly v. Virginia (1999) 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117, a plurality of the high court addressed another requirement that certain hearsay statements must meet before they may be admitted notwithstanding the confrontation clause: the requirement that the statement have particularized guarantees of trustworthiness. The plurality concluded that a trial court's determination that particularized guarantees of trustworthiness exist should be subject to independent review: "[A]s with other fact-intensive, mixed questions of constitutional law, ... `[independent review is ... necessary ... to maintain control of, and to clarify, the legal principles' governing the factual circumstances necessary to satisfy the protections of the Bill of Rights." (Id. at p. 136, 119 S.Ct. 1887.)
In California, the exception to the confrontation right for prior recorded testimony is codified in section 1291, subdivision (a), which provides: "Evidence of former testimony is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and: [¶] ... [¶] (2) The party against whom the former testimony is offered was a party to the action or proceeding in which the testimony was given and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which he has at the hearing." A witness is unavailable if "[a]bsent from the hearing and the proponent of his or her statement has exercised reasonable diligence but has been unable to procure his or her attendance by the court's process." (§ 240, subd .(a)(5).) Although section 240 refers to "reasonable diligence," this court has often described the evaluation as one involving "due diligence." (E.g., People v. Sanders (1995) 11 Cal.4th 475, 523, 46 Cal.Rptr.2d 751, 905 P.2d 420; People v. Cummings (1993) 4 Cal.4th 1233, 1296, 18 Cal.Rptr.2d 796, 850 P.2d 1; People v. Price (1991) 1 Cal.4th 324, 424, 3 Cal.Rptr.2d 106, 821 P.2d 610.)
Before 1986, this court had more than once stated that due diligence presented a question of fact and that a trial court's determination of due diligence was reviewed on appeal for abuse of discretion. (See, e.g., People v. Jackson (1980) 28 Cal.3d 264, 312, 168 Cal.Rptr. 603, 618 P.2d 149 (plur. opn. of Richardson, J.); People v. Enriquez (1977) 19 Cal.3d 221, 235, 137 Cal.Rptr. 171, 561 P.2d 261; People v. Williams (1973) 9 Cal.3d 24, 35, 106 Cal.Rptr. 622, 506 P.2d 998; People v. Dunn (1947) 29 Cal.2d 654, 660-661, 177 P.2d 553.) In that year, however, this court reexamined the issue at considerable length in People v. Louis, supra, 42 Cal.3d 969, 232 Cal.Rptr. 110, 728 P.2d 180 (Louis), and cast grave doubt on the continued viability of these earlier pronouncements.
In Louis, supra, 42 Cal.3d 969, 232 Cal.Rptr. 110, 728 P.2d 180, we found helpful a then recent decision by the Ninth Circuit Court of Appeals, sitting en banc: United States v. McConney (9th Cir.1984) 728 F.2d 1195 (McConney). McConney examined the broad general question of the proper standard of appellate review for mixed questions of law and fact, and it concluded that when, as here, a mixed question of law and fact implicates a constitutional right, "[t]he predominance of factors favoring de novo review is ... striking." (Id. at p. 1203.)
Adopting McConney's functional analysis "within the context of the defendant's right to confrontation and its underlying policies" (Louis, supra, 42 Cal.3d at p. 988, fn. 5, 232 Cal.Rptr. 110, 728 P.2d 180), we concluded in Louis that a trial court's due diligence determination, presenting a mixed question of law and fact, should be *29 subject to independent review: "`[T]o decide if the facts satisfy the legal test of [due diligence] ... necessarily involves us in an inquiry that goes beyond the historical facts. [¶] The mixed question of [due diligence] is rooted in constitutional principles and policies. Like many such mixed questions, its resolution requires us to consider abstract legal doctrines, to weigh underlying policy considerations, and to balance competing legal interests.... [¶] This is a question that no amount of fact-finding will answer.... [¶] When, as here, the application of law to fact requires us to make value judgments about the law and its policy underpinnings, and when, as here, the application of law to fact is of clear precedential importance, the policy reasons for de novo review are satisfied and we should not hesitate to review the [trial] judge's determination independently.'" (Id. at p. 988, 232 Cal.Rptr. 110, 728 P.2d 180, quoting McConney, supra, 728 F.2d at p. 1205, fn. omitted.)
Ultimately, Louis did not decide which standard of review applied to the trial court's due diligence determination because we concluded that, under either an abuse of discretion or an independent review standard, the trial court had erred in ruling the witness to be unavailable at the trial. (Louis, supra, 42 Cal.3d at p. 989, 232 Cal.Rptr. 110, 728 P.2d 180.) Since Louis, when the issue has arisen in this court, our decisions have generally acknowledged that the proper standard of appellate review for a trial court's due diligence determination is an issue awaiting final resolution by this court, while finding it unnecessary to settle the issue in the case then before us. (See, e.g., People v. Sanders, supra, 11 Cal.4th at p. 523, 46 Cal.Rptr.2d 751, 905 P.2d 420; People v. Cummings, supra, 4 Cal.4th at p. 1296, 18 Cal.Rptr.2d 796, 850 P.2d 1; People v. Alcala (1992) 4 Cal.4th 742, 782, fn. 18, 15 Cal.Rptr.2d 432, 842 P.2d 1192; People v. Price, supra, 1 Cal.4th at p. 424, 3 Cal. Rptr.2d 106, 821 P.2d 610; People v. Hovey (1988) 44 Cal.3d 543, 563, 244 Cal.Rptr. 121, 749 P.2d 776.)
Since Louis, supra, 42 Cal.3d 969, 232 Cal.Rptr. 110, 728 P.2d 180, when the issue has arisen in the Court of Appeal, some decisions have adopted abuse of discretion as the proper standard of review (People v. Lepe (1997) 57 Cal.App.4th 977, 986-987, 67 Cal.Rptr.2d 525; People v. Walton (1996) 42 Cal.App.4th 1004, 1010, 49 Cal. Rptr.2d 917; People v. Saucedo (1995) 33 Cal.App.4th 1230, 1236, 40 Cal.Rptr.2d 153; People v. Guiterrez (1991) 232 Cal.App.3d 1624, 1641, 284 Cal.Rptr. 230; People v. Robinson (1991) 226 Cal.App.3d 1581, 1585, 277 Cal.Rptr. 504; People v. Wright (1990) 222 Cal.App.3d 1002, 1006, 272 Cal. Rptr. 219; People v. Turner (1990) 219 Cal.App.3d 1207, 1214, 268 Cal.Rptr. 686; People v. McElroy (1989) 208 Cal.App.3d 1415, 1425-1426, 256 Cal.Rptr. 853), other decisions have adopted independent review as the proper standard (People v. Lopez (1998) 64 Cal.App.4th 1122, 1127, 76 Cal. Rptr.2d 38; People v. Watson (1989) 213 Cal.App.3d 446, 452, 261 Cal.Rptr. 635), and still other decisions have declined to choose between these standards because the choice would not alter the result in the case under review (see, e.g., People v. Wise (1994) 25 Cal.App.4th 339, 343, 30 Cal. Rptr.2d 413).
We now find this court's soundly reasoned approach in Louis, supra, 42 Cal.3d 969, 232 Cal.Rptr. 110, 728 P.2d 180, to be persuasive and in accordance with the United States Supreme Court's analysis of the standard of review for mixed questions of law and fact set forth in Thompson, supra, 516 U.S. 99, 116 S.Ct. 457, 133 L.Ed.2d 383, which was decided after Louis. As with the constitutional right at issue in Thompson, we here face a twofold inquiry in determining whether the prosecution exercised reasonable diligence in its unsuccessful efforts to locate missing witness Culpepper, so that the prosecution could use Culpepper's preliminary hearing testimony at defendant's trial without violating defendant's constitutional right of confrontation.
*30 As in Thompson, supra, 516 U.S. at page 112, 116 S.Ct. 457, the first inquiry is a matter of determining the historical factsa detailed account of the prosecution's failed efforts to locate the absent witness. Those facts will rarely be in dispute. When they are, a reviewing court must, of course, apply a deferential standard of review to the trial court's factual findings.
As in Thompson, the second inquiry whether these historical facts amount to due diligence by the prosecutionrequires application of an objective, constitutionally based legal test to the historical facts. (Thompson, supra, 516 U.S. at p. 112, 116 S.Ct. 457.) As in Thompson, "the trial court's superior capacity to resolve credibility issues is not dispositive.... [T]he crucial question entails an evaluation made after determination of [the historical] circumstances...." (Id. at p. 113, 116 S.Ct. 457, italics added.)
Moreover, as in Thompson, "the trial court does not have a first-person vantage" (Thompson, supra, 516 U.S. at p. 114, 116 S.Ct. 457) on the prosecution's out-of-court efforts to locate the absent witness, as it does on the voir dire of the jury or the defendant's competency to Stand trial. Nor is a determination of due diligence so factually idiosyncratic and highly individualized as to lack any precedential value. To the contrary, this is an area of constitutional law in which "the law declaration aspect of independent review potentially may guide [law enforcement authorities], unify precedent, and stabilize the law." (Id. at p. 115, 116 S.Ct. 457; see also Ornelas, supra, 517 U.S. at p. 697, 116 S.Ct. 1657 ["de novo review tends to unify precedent and will come closer to providing law enforcement officers with a defined `"set of rules'""].)
Accordingly, we conclude that appellate courts should independently review a trial court's determination that the prosecution's failed efforts to locate an absent witness are sufficient to justify an exception to the defendant's constitutionally guaranteed right of confrontation at trial.[3] Without independent review, in the words of the high court in Ornelas, supra, 517 U.S. at page 697, 116 S.Ct. 1657, "[a] policy of sweeping deference would permit, `[i]n the absence of any significant difference in the facts'" the application of the Sixth Amendment "`[to] tur[n] on whether different trial judges draw general conclusions that the facts are sufficient or insufficient to constitute'" due diligence. No less than in the case of the Fourth Amendment question considered in Ornelas, "[s]uch varied results would be inconsistent with the idea of a unitary system of law. This, if a matter-of-course, would be unacceptable. [¶] ... Independent review is therefore necessary if appellate courts are to maintain control of, and to clarify, the legal principles." (Ornelas, supra, 517 U.S. at p. 697, 116 S.Ct. 1657.)
Our conclusion that a trial court's due diligence determination is subject to independent review comports with this court's usual practice for review of mixed question determinations affecting constitutional rights. (See People v. Majors (1998) 18 Cal.4th 385, 417, 75 Cal.Rptr.2d 684, 956 P.2d 1137 [juror misconduct]; People v. Jones (1998) 17 Cal.4th 279, 296, 70 Cal. Rptr.2d 793, 949 P.2d 890 [voluntariness of *31 confession]; People v. Alvarez (1996) 14 Cal.4th 155, 182, 58 Cal.Rptr.2d 385, 926 P.2d 365 [reasonableness of search]; People v. Mickey (1991) 54 Cal.3d 612, 649, 286 Cal.Rptr. 801, 818 P.2d 84 [validity of Miranda waiver]; People v. Leyba (1981) 29 Cal.3d 591, 597, 174 Cal.Rptr. 867, 629 P.2d 961 [reasonableness of detention].)
The Attorney General makes two points. First, he argues that the due diligence determination, although a mixed question, is predominantly factual. He relies on Tolbert v. Page (9th Cir.1999) 182 F.3d 677, in which the federal appeals court sitting en banc adopted a deferential standard for reviewing a trial court's determination whether a defendant had made a prima facie showing under Batson v. Kentucky (1986) 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 that the prosecutor had engaged in discriminatory use of peremptory challenges. The court reasoned: "[T]he prima facie inquiry is so fact-intensive and so dependent on first-hand observations made in open court that the trial court is better positioned to decide the issue; thus, the concerns of judicial administration tip in favor of the trial court." (Tolbert v. Page, supra, 182 F.3d at p. 684, italics added.) In contrast, the events on which the due diligence determination turns do not play out in the courtroom, as we have noted above. The prosecution's efforts to locate a missing witness occur outside the courtroom and must be reconstructed in the courtroom from witness testimony and other evidence. To the extent that these outside events are disputed, the trial court's resolution of disputed factual issues, often by determining the credibility of witnesses, is reviewed deferentially on appeal under the substantial evidence standard. But once a trial court through its findings has determined the historical facts, it is no better situated than an appellate court to make the predominantly legal determination that those facts do or do not demonstrate prosecutorial due diligence in locating the absent witness.
Second, the Attorney General suggests that a due diligence determination, like a negligence finding, requires consideration of the "data of practical human experience," and that, because a prosecutor's efforts to locate a witness depend on local conditions, such as the subpoena practices of each jurisdiction, a trial court is best positioned to make the due diligence determination. We recognize that in some jurisdictions, when searching for a missing witness, the prosecution may be able to take steps that are simply not available in other jurisdictions and that in general local conditions may determine what search tools or techniques are feasible and practical. To this extent, local conditions may affect the ultimate due diligence determination. Nonetheless, the due diligence standard remains the same throughout the state. While we agree that local conditions are relevant to due diligence, we are unpersuaded that trial courts are better able than appellate courts to understand and to give appropriate consideration to local conditions. Any relevant local conditions should be demonstrated on the record, through examination and cross-examination of the witnesses. When this is done, trial and appellate courts will be equally well qualified to understand and consider local conditions in determining due diligence, and appellate courts, as we have explained, have a superior ability to provide guidance, unify precedent, and stabilize the law.

IV
Applying independent review to the undisputed facts, the Court of Appeal concluded that the prosecution had failed to demonstrate due diligence in its efforts to locate Culpepper for trial. We agree.
At the preliminary hearing on June 13, 1997, Culpepper testified under subpoena and appeared to be a cooperative witness. About two weeks later, however, officers patrolling the neighborhood where she lived noticed and reported that Culpepper was no longer there.
*32 Trial was originally set for September 9, 1997, and was then rescheduled for November 20, 1997, December 11, 1997, and January 12, 1998. Subpoenas issued for Culpepper to attend trial on September 9 and December 11, but the prosecution made no effort to serve them. No subpoena issued for Culpepper to attend trial on November 20.
Despite Culpepper's June 1997 disappearance from her neighborhood, it was not until December 1997, with the January 12, 1998, trial date looming ahead, that the prosecution made any serious effort to locate her. Two investigators went to Culpepper's former residence five or six times, only to be informed by a woman at that address that Culpepper no longer lived there.
Trial was continued to January 14, 1998, and then to January 20, 1998, when both sides announced ready for trial. The matter was put over to January 22, 1998, the last permissible day on which to bring defendant to trial.
On January 20, 1998, a man at Culpepper's former home told prosecution investigators that Culpepper was living with her mother, Mildred Culpepper, in San Bernardino. Despite the urgency of the situation, prosecution investigators did nothing to follow up this information until two days later, when an investigator obtained Culpepper's mother's address (apparently from Department of Motor Vehicle records) and drove to her San Bernardino home. A woman at the house said Culpepper's mother was out but would return the next day. She said that Culpepper did not live there, and that she had no idea where Culpepper was. The investigator left a copy of a subpoena for Culpepper, but he did not return the next day, or ever, to speak to Culpepper's mother, nor did he attempt to find other ways to contact Culpepper's mother, such as at a work location or by telephone. Apart from consulting computerized information systems, the county jail, and the county hospital, the prosecution made no other efforts to locate Culpepper.
On January 27, 1998, after a hearing at which the prosecution presented evidence of these facts, the trial court determined that the prosecution had exercised due diligence in attempting to locate Culpepper, and it ruled that the prosecution could use her former testimony in evidence against defendant.
We have said that the term "due diligence" is "incapable of a mechanical definition," but it "connotes persevering application, untiring efforts in good earnest, efforts of a substantial character ." (People v. Under (1971) 5 Cal.3d 342, 346-347, 96 Cal.Rptr. 26, 486 P.2d 1226; accord, People v. Sanders, supra, 11 Cal.4th at p. 523, 46 Cal.Rptr.2d 751, 905 P.2d 420.) Relevant considerations include "`whether the search was timely begun'" (People v. Sanders, supra, 11 Cal.4th at p. 523, 46 Cal.Rptr.2d 751, 905 P.2d 420), the importance of the witness's testimony (Louis, supra, 42 Cal.3d at p. 991, 232 Cal.Rptr. 110, 728 P.2d 180), and whether leads were competently explored (People v. Enriquez, supra, 19 Cal.3d at pp. 236-237, 137 Cal.Rptr. 171, 561 P.2d 261).
Here, as the Court of Appeal correctly concluded, the undisputed facts do not demonstrate that the prosecution exercised reasonable diligence to secure Culpepper's attendance at defendant's trial. Although the prosecution lost contact with Culpepper after the preliminary hearing, and within two weeks had received a report of her disappearance, and although trial was originally scheduled for September 1997, the prosecution made no serious effort to locate her until December 1997. After the case was called for trial on January 20, 1998, the prosecution obtained promising information that Culpepper was living with her mother in San Bernardino, but prosecution investigators waited two days to check out this information. With jury selection under way, an investigator went to Culpepper's mother's residence, where he received information that the mother would return the next day, yet the investigator never bothered to return to *33 speak to Culpepper's mother, the person most likely know where Culpepper then J., was. Thus, serious efforts to locate Culpepper were unreasonably delayed, and investigation of promising information was unreasonably curtailed.
The prosecution failed to exercise reasonable diligence to secure Culpepper's attendance at defendant's trial.

DISPOSITION
The judgment of the Court of Appeal is affirmed.
GEORGE, C.J., MOSK, J., BAXTER, WERDEGAR, J., CHIN, J., and BROWN, J., concur,
NOTES
[1] By "more competent," we do not mean that appellate court justices possess legal talents or skills greater than those of trial court judges. Rather, we mean that as an institution an appellate court is better suited to the task of deciding difficult legal questions because the time pressures for both counsel and the court are generally less intense in the appellate arena, and also because appellate courts, sitting in panels of three or more, employ collegial and deliberative procedures not available to trial courts, over each of which a single judge presides. In addition, appellate courts, by virtue of their position at or near the top of the judicial hierarchy, are better able to ensure that the law is construed and applied in the same way regardless of the specific case or the parties involved.
[2] Unavailability may also be shown by evidence that the witness is deceased or mentally incompetent, has properly exercised a testimonial privilege, or has removed to a location beyond the reach of the court's process. (See § 240, subd. (a)(1)(4).)
[3] To the extent they contain language inconsistent with this conclusion, we disapprove these decisions: People v. Jackson, supra, 28 Cal.3d 264, 168 Cal.Rptr. 603, 618 P.2d 149; People v. Enriquez, supra, 19 Cal.3d 221, 137 Cal.Rptr. 171, 561 P.2d 261; People v. Williams, supra, 9 Cal.3d 24, 106 Cal.Rptr. 622, 506 P.2d 998; People v. Dunn, supra, 29 Cal.2d 654, 177 P.2d 553; People v. Lepe, supra, 57 Cal.App.4th 977, 67 Cal.Rptr.2d 525; People v. Walton, supra, 42 Cal.App.4th 1004, 49 Cal.Rptr.2d 917; People v. Saucedo, supra, 33 Cal.App.4th 1230, 40 Cal.Rptr.2d 153; People v. Guiterrez, supra, 232 Cal. App.3d 1624, 284 Cal.Rptr. 230; People v. Robinson, supra, 226 Cal.App.3d 1581, 277 Cal.Rptr. 504; People v. Wright, supra, 222 Cal.App.3d 1002, 272 Cal.Rptr. 219; People v. Turner, supra, 219 Cal.App.3d 1207, 268 Cal. Rptr. 686; and People v. McElroy, supra, 208 Cal.App.3d 1415, 256 Cal.Rptr. 853.