Filed 5/14/13  P. v. Martinez CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B242142 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YA077886) |
| v. | |
| ANTHONY MARTINEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Victor L. Wright, Judge.  Affirmed as modified.

Jean Ballantine, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Eric E. Reynolds and Esther P. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Anthony Martinez was convicted, following a jury trial, of one count of attempted willful, deliberate and premeditated murder in violation of Penal Code sections 187 and 664.[1]  The jury found true the allegation that a principal in the crime personally and intentionally discharged a firearm within the meaning of section 12022.53, subdivisions (b), (c) and (e)(1).  The trial court sentenced appellant to 15 years to life for the attempted murder conviction plus an enhancement term of 20 years to life for the firearm allegation, for a total of 35 years to life in state prison.

Appellant appeals from the judgment of conviction, contending that the trial court erred in permitting the prosecutor to use the preliminary hearing testimony of the victim and in calculating his presentence custody credits.  In a supplemental brief, appellant contends that the sentence of 15 years to life is unauthorized.  We agree that the amount of presentence custody credits awarded by the trial court is incorrect and that the minimum term of 15 years on the life sentence is unauthorized.  We order the credits and sentence corrected, as is set forth in more detail in the disposition.  We affirm the judgment of conviction in all other respects.

Facts

On April 25, 2010, about 6:00 a.m., Jorge Cervantes was walking along South Fir Avenue in Inglewood when he saw a red Explorer and a white Camry driving toward him.  The two vehicles passed him, then suddenly turned around and stopped.  Someone in the Explorer said, "Fucking Mexican."  The front passenger lowered his window, and fired a black pistol.

Cervantes threw himself on the ground.  When he looked up, the shooter fired again.  Cervantes stood up and ran through a near-by alley.  The shooter fired four more shots.  Cervantes hid in the alley until police came.

Inglewood Police Department Officer Adam Butler heard a radio call about the shooting from a red Explorer.  Officer Butler knew that Hakim Rasul drove a red

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

Explorer, and that he hung out at appellant's and appellant's brother's residence on North Victor Avenue.[2] The officer went to that location and saw the Explorer and also the Camry which was mentioned in the radio call. He examined the Explorer and saw an expended bullet casing in the luggage rack of the roof of the Explorer. Officer Butler called for assistance. The officers were able to contain the residence.

Police took Cervantes to Hill and Victor Streets, where he saw the Explorer and the Camry. At that time, he identified the driver of the Explorer. At the preliminary hearing, Cervantes identified appellant as the shooter.

A search of appellant's residence uncovered four handguns, a shotgun and ammunition. A DNA sample from one of the handguns matched appellant's DNA. Gunshot residue was found on appellant.

Cervantes did not testify at trial. In December 2010, Los Angeles District Attorney Investigator Isbashi sought help from the United States Marshall's Service in locating Cervantes. Inspector Reyes from that Service learned that Cervantes was deported to Mexico on July 23, 2010, about five weeks after the preliminary hearing in this matter. Inspector Reyes located Cervantes in Mexico in January 2011. Cervantes said that he wanted to come back and testify, but was afraid for his life. Inspector Reyes made contact with Cervantes numerous times after that initial contact. Cervantes stayed in Mexico. On November 11, 2011, Cervantes told Inspector Reyes that he was "disillusioned" with court proceedings because the trial date had been continued so many times and stated that he did not want to testify. The prosecutor filed a motion to allow the reading of Cervantes's preliminary hearing testimony at trial. The motion was granted.

In his defense, appellant offered the testimony of Dr. Ronald Markman, a psychiatrist. Dr. Markman testified about various factors which could affect a witness's ability to make an accurate identification.

---

[2] Hakim Rasul and appellant's brother Juan Martinez were charged in this case along with appellant, but are not parties to this appeal.

Appellant's mother also testified on appellant's behalf. She testified that she asked appellant to drive her to work at 6:00 or 6:30 a.m. on the day of the shooting, and he agreed to take her when she was ready. Then, at some point that morning, she saw police all around her residence. On cross-examination, she acknowledged that appellant told her that he did not have a valid driver's license and that she decided to take the bus to work.

Appellant then testified in his own behalf. He stated that he had spent the night at his mother's house, working on his music. He fell asleep about 2:00 a.m. He woke up about 6:00 a.m. when his mother came in and asked him to take her to work. As appellant was getting ready, his brother and some friends came into the house with weapons, and left the weapons on a table. Appellant grabbed the weapons and told them to get the weapons out of there and to leave.

Appellant denied knowing that the handguns were in his studio (where police found them) and believed that his brother's friends put them there. Appellant further denied being at the location of the shooting. He denied leaving his studio that morning.

Discussion

1. Unavailable witness

Appellant contends that he did not have an adequate opportunity to cross-examine Cervantes at the preliminary hearing, the prosecution failed to use due diligence to secure Cervantes's attendance at trial and the trial court thus erred in admitting the preliminary hearing testimony of Cervantes at trial. He further contends that this error denied him a fair trial and violated his federal and state constitutional right to confrontation.

"A defendant has a constitutional right to confront witnesses, but this right is not absolute. If a witness is unavailable at trial and has testified at a previous judicial proceeding against the same defendant and was subject to cross-examination by that defendant, the previous testimony may be admitted at trial. (*Barber v. Page* (1968) 390 U.S. 719 [88 S.Ct. 1318, 20 L.Ed.2d 255]; *People v. Enriquez* (1977) 19 Cal.3d 221, 235 [137 Cal.Rptr. 171, 561 P.2d 261, 3 A.L.R.4th 73], disapproved on other grounds in *People v. Cromer* (2001) 24 Cal.4th 889, 901, fn. 3 [103 Cal.Rptr.2d 23, 15 P.3d 243];

4

Evid. Code, § 1291.)  The constitutional right to confront witnesses mandates that, before a witness can be found unavailable, the prosecution must 'have made a good-faith effort to obtain his presence at trial.'  (*Barber v. Page*, *supra*, at p. 725, quoted in *People v. Enriquez*, *supra*, at p. 235; see also *Ohio v. Roberts* (1980) 448 U.S. 56, 74 [100 S.Ct. 2531, 2543, 65 L.Ed.2d 597].)  The California Evidence Code contains a similar requirement.  As relevant, it provides that to establish unavailability, the proponent of the evidence, here the prosecution, must establish that the witness is absent from the hearing and either that 'the court is unable to compel his or her attendance by its process' (Evid. Code, § 240, subd. (a)(4)) or that the proponent 'has exercised reasonable diligence but has been unable to procure his or her attendance by the court's process' (Evid. Code, § 240, subd. (a)(5)).  The constitutional and statutory requirements are 'in harmony.' (*People v. Enriquez*, *supra*, at p. 235.)  The proponent of the evidence has the burden of showing by competent evidence that the witness is unavailable.  (*People v. Price* (1991) 1 Cal.4th 324, 424 [3 Cal.Rptr.2d 106, 821 P.2d 610].)"  (*People v. Smith* (2003) 30 Cal.4th 581, 609.)

Appellant acknowledges that since Cervantes was in Mexico, he was unavailable under state law, but contends that the prosecution did not show the required constitutional good faith effort to obtain Cervantes's presence at trial.  Appellant contends that this good faith effort required the prosecution to both try to prevent Cervantes from becoming absent and to try to obtain Cervantes's return from Mexico.

Appellant is correct that a prosecutor is required to use reasonable means to prevent a witness from becoming absent.  (*People v. Friend* (2009) 47 Cal.4th 1, 68; *People v. Louis* (1986) 42 Cal.3d 969, 991.)  As appellant acknowledges, a prosecutor is not required "to keep 'periodic tabs' on every material witness in a criminal case." (*People v. Friend*, *supra*, 47 Cal.4th at p. 68.)  However, when there is knowledge of a substantial risk that an important witness will flee, the prosecutor should take adequate preventative measures to stop the witness from disappearing.  (*Ibid*.)

Here, there was simply no evidence that the prosecution had any reason to believe that Cervantes would flee or be deported before trial.  The prosecution may well have

5

known that Cervantes was not a citizen and could be deported if he violated the law, but there is no evidence suggesting that the prosecution had any reason to believe that Cervantes would violate the law. There is also no evidence that the prosecution knew before Cervantes was deported that Cervantes had been taken into custody and that the federal authorities planned to deport him. The law does not require the prosecution to seek judicial detention under section 1332 of every material witness who is not a citizen or even to videotape the testimony of all such witnesses.

Appellant's reliance on *People v. Roldan* (2012) 205 Cal.App.4th 969 to show lack of due diligence is misplaced. In *Roldan*, the witness was arrested on a probation violation, served five months in county jail for the violation, then remained in county jail on a federal immigration hold for nine months, until he testified at the preliminary hearing. After the hearing, he was released to federal authorities and deported to Mexico. (*Id*. at p. 976.) There was evidence that the prosecution knew that the witness was in custody prior to the preliminary hearing and was to be deported, but took no formal steps to prevent the deportation. (*Id*. at pp. 976-977.) There is no such showing of knowledge here.

Appellant is also correct that even when a witness's attendance cannot be compelled by the court's process, the prosecution has a constitutional duty to attempt to secure the witness's presence by other means. (*People v. Sandoval* (2001) 87 Cal.App.4th 1425, 1441 ["good faith effort must be undertaken even though the court itself does not have the power to compel the attendance of the witness"].)

There is no strict formula for what constitutes a good faith effort or due diligence. (*People v. Cromer* (2001) 24 Cal.4th 889, 904.) Here, the prosecutor used an investigator to track down Cervantes in Mexico and try to persuade him to return voluntarily to testify at trial. Cervantes told the investigator that he wanted to testify but was afraid to do so. The investigator continued to try to convince him to return. Eventually, in November 2011, about two months before trial, Cervantes told the investigator that he did not want to testify.

6

Appellant contends that the prosecution should have tried to invoke a treaty between the United States and Mexico concerning mutual cooperation in legal matters. There is no evidence in the record of this treaty. Appellant relies on a brief description of the treaty in *People v. Sandoval*, *supra*, 87 Cal.App.4th at pages 1438-1439. Nothing in that description shows that a person can be compelled to return to the United States.[3] At most, the treaty permits the person's testimony to be ordered taken in Mexico. There is nothing in the record to show if requests under the treaty are ever honored by Mexico.

Given the record before us, we cannot say that the prosecution was required to attempt to invoke this treaty. The prosecution did not just throw up its hands and do nothing. The prosecution chose to track down Cervantes and try to convince him to return. Given that Cervantes was the victim and did not leave the United States voluntarily, the prosecution's decision was a reasonable one. It satisfies the constitutional good faith effort requirement.

Appellant also contends that even assuming the good faith effort requirement was satisfied, he did not have an adequate opportunity to cross-examine Cervantes before trial.

"Although defendants generally have the right to confront their accusers at trial, this right is not absolute. 'If a witness is unavailable at trial and has testified at a previous judicial proceeding against the same defendant and was subject to cross-examination by that defendant, the previous testimony may be admitted at trial.' (*People v. Smith* (2003) 30 Cal.4th 581, 609 [134 Cal.Rptr.2d 1, 68 P.3d 302]; see Evid. Code, § 1291, subd. (a).) The defendant 'must not only have had the *opportunity* to cross-examine the witness at the previous hearing, he must also have had "an interest and motive similar to that which he has at the [subsequent] hearing."' (*People v. Smith*, *supra*, at p. 611.) *Under these rules, 'we have routinely allowed admission of the preliminary hearing testimony of an*

---

[3] The treaty may permit a person in custody in Mexico to be returned to the United States.

*unavailable witness.'* (*Ibid*.)" (*People v. Seijas* (2005) 36 Cal.4th 291, 303, second italics added.)[4]

Here, appellant's counsel had the opportunity to cross-examine Cervantes at the preliminary hearing. Counsel's cross-examination thoroughly covered events leading up to the shooting, and the shooting itself. Counsel for one of appellant's codefendant's also cross-examined Cervantes at some length. Both counsel sought to discredit Cervantes's identification of the two men. These questions would have been pertinent at trial. There were no time or other restrictions on the cross-examinations. Thus, appellant's trial counsel had the same interest, motive and opportunity to cross-examine Cervantes that he would have had at trial.[5]

To the extent appellant relies on *Roldan* and *Louis* to show error, his reliance is misplaced. Any mention of the adequacy of preliminary hearing testimony in those cases was dicta. (*People v. Louis*, *supra*, 42 Cal.3d at pp. 990-991 [expressly stating that the Court was not considering appellant's claim that he had a different motive and interest in cross-examining the witness at the preliminary hearing than he would have had at trial]; *People v. Roldan*, *supra*, 205 Cal.App.4th at p. 985, fn. 4 ["we need not address Roldan's alternative argument[] that . . . he did not have an adequate opportunity to cross-examine Barrera at the preliminary hearing."].)

---

[4] "The recent decision of *Crawford v. Washington* (2004) 541 U.S. 36 [124 S.Ct. 1354, 158 L.Ed.2d 177], although changing the law of confrontation in some respects, left these principles intact. 'Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine.' (*Id*. at p. 59.) 'Where testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination.' (*Id*. at p. 68.)" (*People v. Seijas, supra,* 36 Cal.4th at p. 303.)

[5] "As long as defendant was given the opportunity for effective cross-examination, the statutory requirements were satisfied; the admissibility of this evidence did not depend on whether defendant availed himself fully of that opportunity." (*People v. Zapien* (1993) 4 Cal.4th 929, 975.)

The general rule is that the preliminary hearing testimony of an unavailable witness is admissible.  (See *People v. Seijas, supra,* 36 Cal.4th at p. 303.)  Appellant has given us no reason to depart from that rule.

### 2.  Presentence custody credits

Appellant contends that the trial court erred in calculating his presentence custody credits and that he is entitled to additional days.  He requests that we order correction of the abstract of judgment to reflect these additional days.  Respondent agrees that appellant is entitled to additional days, but contends that the matter should be remanded to the trial court for a calculation of the days.  Since appellant and respondent agree on the correct number of days, there is no need to remand this matter to the trial court.

As the parties agree, and the record reflects, appellant was arrested on April 25, 2010 and thereafter was in custody until he was sentenced on June 12, 2012.  Thus, he was entitled to 780 days of actual custody, one more than the 779 days the trial court awarded.

As the parties also agree, appellant was entitled to 117 days conduct credit, two more than the 115 days the trial court awarded.  Because appellant was convicted of a violent felony within the meaning of section 667.5, subdivision (c), his conduct credit is limited to 15 percent of his actual credit.  (§ 2933.1, subd. (c).)  Fifteen percent of 780 is 117.  In total, appellant is entitled to 897 days of presentence custody credit rather than the 894 days the trial court awarded.

### 3.  Sentence

In a supplemental brief, appellant contends that his sentence of 15 years to life for attempted murder is unauthorized.  Respondent agrees.  We agree as well.  The sentence for attempted murder is life with the possibility of parole.  (§ 664, subd. (a).)  A mandatory minimum term of 15 years applies in cases involving the attempted murder of a peace officer or firefighter.  (§ 664, subd. (f).)  It does not apply here.  The abstract of judgment must be corrected.

Disposition

The abstract of judgment is ordered corrected to show that appellant has 780 days of actual custody credit and 117 days of custody credit for a total of 897 days of presentence custody credit.  The abstract of judgment is also ordered corrected to show that appellant's sentence for the premeditated attempted murder conviction is life with the possibility of parole.  The reference to a minimum term of 15 years is ordered stricken.  The clerk of the superior court is instructed to prepare an amended abstract of judgment showing these corrections and to deliver a copy to the Department of Corrections and Rehabilitation.  The judgment of conviction is affirmed in all other respects.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ARMSTRONG, Acting P. J.


We concur:


MOSK, J.


KRIEGLER, J.


10