Filed 2/16/24  P. v. Amaya CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ERNEST AMAYA,<br><br>    Defendant and Appellant. | B325179<br><br>(Los Angeles County<br>Super. Ct. No. TA154811) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Teresa P. Magno, Judge.  Affirmed.

Gabriel Silvers, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Wyatt E. Bloomfield, Supervising

Deputy Attorney General, and Stefanie Yee, Deputy Attorney General, for Plaintiff and Respondent.

\* \* \* \* \* \*

A jury convicted Ernest Amaya (defendant) of assaulting a fellow train passenger with a knife. Defendant argues that his assault conviction is invalid due to instructional error and the ineffective assistance of his counsel. His arguments lack merit, so we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

Just before 10 p.m. on a Monday night in June 2021, defendant was riding on a Metro train. Out of the blue, he started yelling racial slurs, including repeatedly calling other passengers the "'N' word." Several of those passengers yelled back at defendant, telling him not to use such slurs and to stop. When defendant persisted, some of the passengers verbally told him he was "going to get beat" if he continued. One of those passengers, Brandon Vernell (Vernell), was sitting near defendant on the train, and told him that he was going to "kick [his] fucking ass" and "fuck [him] up" if he did not cease his racial epithets. Vernell never acted on his threats, and stayed in his seat. However, a second passenger wearing a white tank top approached defendant, spit on him, and punched him several times before walking away. A third passenger approached and struck defendant, causing him to fall onto the ground. While defendant was on the ground, the second passenger returned and stomped on or kicked defendant's head and a fourth passenger named Allen McGee (McGee) made a lurching motion toward defendant as if to threaten him. All those men then walked

2

away.  Defendant then stood up, pulled out a knife, and swung it at Vernell and McGee, slashing McGee twice.  When the train arrived at the next station, most of the passengers fled but defendant chased after them with the knife.  Defendant only dropped the knife when a security officer ordered him to do so at gunpoint.

## II.    Procedural Background

In the operative amended information, the People charged defendant with two counts of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1))—one count against McGee and the other against Vernell.

The matter proceeded to a jury trial.  Defendant testified. He denied ever using the "'N' word," instead asserting that "[e]verybody in the train was saying stuff to [him], that they were going to beat [him] up," and that he was "scared."  The trial court gave several instructions pertinent to the defense of self-defense.

The jury hung on the assault count against McGee, but found defendant guilty of assaulting Vernell.

The trial court sentenced defendant to two years in state prison.

Defendant filed this timely appeal.[1]

### DISCUSSION

Defendant argues that his assault conviction must be reversed because (1) the trial court's failure to instruct the jury with the second sentence of the instruction in CALCRIM No. 917 violated his right to present a defense, and his counsel was

---

1    Defendant filed his notice of appeal after the jury rendered its verdict but before the pronouncement of judgment and his sentence.  We treat the prematurely filed notice of appeal as timely.  (See Cal. Rules of Court, rule 8.308(c).)

3

constitutionally ineffective for not requesting that the jury be instructed with the second sentence of that instruction, and (2) his counsel was constitutionally ineffective for not requesting an instruction on the defense of accident. We independently review claims of instructional error, constitutional error, and ineffective assistance of counsel. (*People v. Nelson* (2016) 1 Cal.5th 513, 538 [instructional error]; *People v. Cromer* (2001) 24 Cal.4th 889, 894 [constitutional error]; *People v. Mayfield* (1993) 5 Cal.4th 142, 199 [ineffective assistance of counsel].)

**I.     Failure to Instruct on Remainder of CALCRIM No. 917**

### A.     *Pertinent facts*

During trial, defendant requested that the jury be instructed with the first sentence of CALCRIM No. 917,[2] but did not request the second sentence of the instruction. The court instructed the jury on the first sentence of CALCRIM No. 917, which reads: "Words, no matter how offensive, and acts that are not threatening, are not enough to justify an assault or battery."

The court also gave three self-defense instructions.

First, the court gave the CALCRIM No. 3470 instruction. That instruction stated that "Self-defense is a defense to Assault with a Deadly Weapon and to Simple Assault." The instruction went on to define the three elements of "lawful self-defense" as: (1) "[t]he defendant reasonably believed that he was in imminent danger of suffering bodily injury"; (2) "[t]he defendant reasonably believed that the immediate use of force was necessary to defend against that danger"; and (3) "[t]he defendant used no more force

---

2      Defendant asked that some of the language from the first sentence be omitted, but the trial court denied that request and defendant does not challenge that ruling on appeal.

than was reasonably necessary to defend against that danger." The instruction further explained that "[w]hen deciding whether the defendant's beliefs were reasonable, *consider all the circumstances* as they were known to and appeared to the defendant and consider what a reasonable person in a similar situation with similar knowledge would have believed." (Italics added.) The instruction also provided that "[i]f [the jury] find[s] that the defendant received a threat from someone else that he reasonably associated with . . . McGee and . . . Vernell, [the jury] may consider that threat in deciding whether the defendant was justified in acting in self-defense."

Second, the court gave the CALCRIM No. 3472 instruction, which provided that "[a] person does not have the right to self-defense if he or she provokes a fight or quarrel with the intent to create an excuse to use force."

Third, the court gave the CALCRIM No. 3474 instruction, which provided that "[t]he right to use force in self-defense continues only as long as the danger exists or reasonably appears to exist. When the attacker withdraws or no longer appears capable of inflicting any injury, then the right to use force ends."

In closing argument, defendant argued that he acted in self-defense in swinging his knife at Vernell because Vernell had verbally threatened him. In rebuttal, the prosecutor did not dispute that Vernell's verbal threats might provide a basis for self-defense; instead, he argued that Vernell's purely oral threats—when Vernell did not otherwise get up or participate in physically harming defendant—meant that Vernell never threatened defendant.

B. *Analysis*

Defendant argues that the jury should also have been

5

instructed with the second sentence of CALCRIM No. 917. That sentence, as tailored to this case, provides: "If you conclude that [Vernell] spoke or acted in a way that threatened the defendant with immediate harm or an unlawful touching or great bodily injury, you may consider that evidence in deciding whether the defendant acted in self-defense." Defendant asserts that the trial court's failure to instruct using this second sentence (1) denied him his constitutional right to present a defense, and (2) was the product of ineffective assistance of counsel.

Defendant was not denied his constitutional right to present a defense. To be sure, the second sentence of CALCRIM No. 917 would have explicitly informed the jury that it could consider whether Vernell's words were threatening and, if they were, consider those threatening words in deciding whether defendant was justified in swinging the knife at Vernell in self-defense. But the absence of this language did not *preclude* defendant from arguing that Vernell's statements were threatening and that defendant was "scared" and hence acted reasonably in self-defense. Indeed, defendant made precisely that argument during closing argument. What is more, the CALCRIM No. 3470 instruction explicitly informed the jury that it could "consider *all the circumstances* as they were known to and appeared to the defendant" in assessing the reasonableness of defendant's beliefs that he was in imminent danger of suffering bodily injury and that immediate use of force was necessary. Vernell's words were part of those circumstances. A defendant is not denied his right to present a defense due to the absence of an instruction when he is still permitted to present that defense by virtue of a different instruction and when he actually does so. (E.g., *People v. Watt* (2014) 229 Cal.App.4th 1215, 1219 [so

6

holding]; accord, *People v. Humphrey* (1996) 13 Cal.4th 1073, 1089 [instructions that do not "deprive" a defendant "of the right to present" a defense do not violate the Constitution].) Defendant's assertion that the second sentence of CALCRIM No. 917 was the "necessary" "legal footing" for him to rely on Vernell's words as a basis for his self-defense claim is incorrect.

Defendant was also not denied the effective assistance of counsel. To establish ineffective assistance of counsel, a defendant must show that counsel's performance was both (1) deficient and (2) prejudicial. (*People v. Mai* (2013) 57 Cal.4th 986, 1009 (*Mai*).)

Both elements are absent here.

Defendant's attorney was not deficient for failing to request that the jury be instructed with the second sentence of the CALCRIM No. 917 instruction for several reasons. To begin, the instructions as a whole permitted defendant to argue that Vernell's verbal threats were relevant to defendant's claim of self-defense, so the instructions *as given* were not incorrect. Indeed, this is why CALCRIM No. 917 is a so-called pinpoint instruction: It specifically pinpoints a theory that other instructions already encompass. (*People v. Mayes* (1968) 262 Cal.App.2d 195, 198; see generally *People v. Scully* (2021) 11 Cal.5th 542, 592 ["Pinpoint instructions 'relate particular facts to a legal issue in the case or "pinpoint" the crux of a defendant's case . . .'"].) Requests for pinpoint instructions may be denied when they would be duplicative of other instructions (*Scully*, at p. 592; *People v. Bolden* (2002) 29 Cal.4th 515, 558), and here, the CALCRIM No. 3470 instruction already told the jury that threats from anyone associated with Vernell were relevant to self-defense; that language reaffirms that threats *from Vernell himself* were

7

relevant—which is precisely what the second sentence of the CALCRIM No. 917 instruction would have stated. Further, defendant's attorney had a tactical reason for requesting only the first sentence of the CALCRIM No. 917 instruction—namely, that the attorney sought to use this language to argue that the train passengers were not justified *in assaulting defendant* for his mere words, no matter how offensive they might be; the second sentence of the CALCRIM No. 917 instruction was unnecessary to that point and the relevance of Vernell's statements to defendant's self-defense claim was, as noted above, already established by the general self-defense instructions. This was a reasonable tactical choice, particularly in light of the fact that we must "presume[] counsel acted within the wide range of reasonable professional assistance." (*Mai*, *supra*, 57 Cal.4th at p. 1009.) We may reverse on direct appeal only if the record discloses "no rational tactical purpose" or "satisfactory explanation" for counsel's decision (*ibid.*); as explained above, we are able to perceive a rational tactical purpose.

There was also no prejudice because, as explained above, defendant was still able to—and *did*—argue that Vernell's words were threatening and caused him to act in self-defense. The jury may have rejected defendant's testimony, but its verdict had nothing to do with instructional error. Defendant responds that the jury's inability to reach a verdict as to McGee reveals the importance of the missing jury instruction language, but McGee and Vernell played vastly different roles during the incident on the train: McGee conversed with the second passenger before that passenger punched defendant and McGee subsequently made a flinching move toward defendant, while Vernell remained seated and took no physical actions toward defendant until

defendant came at him with a knife.

## II. Failure to Instruct on Defense of Accident

Defendant next argues that his attorney was constitutionally ineffective for not requesting an instruction on the defense of accident because defendant simply "may have fallen while trying to make his way down the aisle [of the train] and harmed Vernell accidentally."

There was no ineffective assistance of counsel. Defendant's attorney was not deficient for failing to request an accident instruction. To begin, defendant testified at trial that he swung his knife at Vernell "because [Vernell] was . . . one of the ones that . . . said he was going to kick [his] ass" and "that was threatening [him]"; he "felt that [Vernell] was going to attack [him]"; and he "swang [sic] but towards – not towards him. Kind of." In other words, defendant testified that he *intentionally* swung his knife at Vernell. At no point did defendant testify that his conduct was an accident. This was wise, as the claim that "I did it by accident" is inherently inconsistent with the claim that "I did it on purpose in self-defense." (E.g., *People v. McCoy* (1984) 150 Cal.App.3d 705, 709; *People v. Curtis* (1994) 30 Cal.App.4th 1337, 1355-1356.) Because there was no evidence—let alone substantial evidence—to support a defense of accident, and because an accident defense was inherently inconsistent with his defense of self-defense, the trial court was neither obligated to instruct sua sponte on the defense of accident nor to grant any request for such an instruction by counsel. (*People v. Jo* (2017) 15 Cal.App.5th 1128, 1165-1168 [no duty to sua sponte instruct on defense if it is not supported by substantial evidence or if it is inconsistent with the defendant's theory of the case]; *People v. Panah* (2005) 35 Cal.4th 395, 484 [no duty to instruct on

9

requested defense if it is not supported by substantial evidence].) Because counsel is not ineffective for failing to request an instruction that a court would properly deny, defendant's attorney's performance was neither deficient nor prejudicial. (*People v. Dennis* (1998) 17 Cal.4th 468, 504, 541 [trial counsel is not ineffective for failing to request a jury instruction to which the defendant is not entitled].)

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

HOFFSTADT


We concur:


_____, P. J.

LUI


_____, J.

ASHMANN-GERST