Filed 5/21/14  P. v. Lyons CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| **THE PEOPLE,** | |
| **Plaintiff and Respondent,** | **A138476** |
| **v.** | |
| **BRENT DAMION LYONS,** | **(Alameda County** |
| **Defendant and Appellant.** | **Super. Ct. No. 169066)** |

Appellant Brent Damion Lyons appeals from his conviction, after a jury trial, of assault by means likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4)), carrying a loaded firearm in a city (*id.*, former § 12031, subd. (a)), and carrying a concealed firearm in a vehicle (*id.*, former § 12025, subd. (a)(1)).[1]  He contends (1) the trial court erred in admitting the preliminary hearing testimony of the assault victim, Kiana Dominick, (2) the trial court erred in admitting a statement regarding appellant's release from custody, and (3) his trial counsel was ineffective for failing to object to two witnesses' testimony about statements made by Dominick.  We reject appellant's contentions and affirm.

### BACKGROUND

The evidence at trial relevant to this appeal is as follows.  Oakland Police Officer Darwin Téllez testified he was on patrol in a marked police car about 10:30 p.m. on

---

[1]     Former Penal Code sections 12025 and 12031 were repealed by Stats. 2010, ch. 711, § 4, operative January 1, 2012.

1

November 4, 2011. A car behind him flashed its high beam headlights and the two cars pulled over. Dominick exited her car. Her right eye was swollen, her upper lip was bleeding, and she was shaking and crying hysterically. She told Téllez, "My boyfriend just beat me up." Dominick wanted to go home and Téllez followed her there. When they arrived, Dominick told Téllez she heard three gunshots when she left her boyfriend's residence. While Dominick, Téllez, and another officer, Eric Kim, stood in front of Dominick's home, a truck drove by. Dominick pointed at the truck and said, "That's him." Téllez asked Dominick if that was the boyfriend who beat her up, and Dominick said it was. Téllez and Kim followed the truck and Téllez saw the driver turn his shoulders at a 45-degree angle and move his right forearm up and down three times. The truck stopped and appellant exited. Téllez found a loaded gun wedged between the driver's and passenger's sides, in a location consistent with the movements he saw appellant make.

Officer Kim also testified to the events of November 4. He observed Dominick had swelling on her face and was upset. When the truck drove by, Dominick appeared fearful and said, "That's him." Kim asked her if the driver was the person who assaulted her and she said yes. After appellant was apprehended, Kim returned to Dominick's home. Dominick told Kim appellant struck her in the face several times and she heard a single gunshot as she was trying to get away.

Officer Quiana Johnson interviewed Dominick at a hospital on the night of the assault. Dominick consistently told Johnson appellant caused her injuries. Johnson took a three-page written statement from Dominick which Dominick reviewed and signed. The statement was admitted into evidence.

Dominick did not testify at trial, but her preliminary hearing testimony was read to the jury. She testified about her statement to Johnson on the night of the assault. She told Johnson she had gone to appellant's house and stayed there while he played dominoes with friends. Appellant was her boyfriend; they had been in a relationship for two and a half years. At some point, appellant began yelling at Dominick. Dominick told Johnson she remembered being on the ground while appellant repeatedly punched

2

her face, but could not remember how she got on the ground.  Eventually someone helped her up and she left.  After leaving the house, Dominick threw an object at appellant's truck.

At the preliminary hearing, Dominick admitting making these statements to Johnson but testified that in fact appellant did not cause her injuries.  Instead, Dominick testified that on November 4, she was attempting to buy marijuana from a man.  The man's girlfriend apparently thought Dominick was "messing around" with him, and she and another woman assaulted Dominick.  Afterwards, Dominick went to appellant's house.  They had recently broken up and Dominick was seeking his help and moral support.  When Dominick arrived, appellant told her to leave because it was not his problem since they were no longer dating.  Dominick was upset and angry at him.  When she left appellant's house she threw an object at his truck, then began to drive home.

Dominick testified her statements to Téllez that appellant assaulted her were not true.  She lied to Téllez because she was upset with appellant.  Similarly, she lied to Johnson because she was mad at appellant for refusing to help her.

Testimony regarding two other sets of statements made by Dominick was admitted at trial for the limited purpose of assessing the credibility of Dominick's preliminary hearing testimony.  First, police investigator Rufus Wright conducted an audio-recorded interview with Dominick on November 7, 2011.  During this interview, which was played to the jury, Dominick stated appellant assaulted her.  Second, Dominick approached Johnson at a football game in December 2011.  Dominick told Johnson appellant's family members were at the game and she felt they were trying to intimidate her.  She also stated she "was a little disturbed at the fact that [appellant] was released from jail and no one informed her.  She had to find out by calling down to Santa Rita herself."

DISCUSSION

I. *Dominick's Preliminary Hearing Testimony*

Appellant first contends the admission of Dominick's preliminary hearing testimony was reversible error under the confrontation clause and Evidence Code section 1291 because Dominick was not unavailable to testify at trial.  We disagree.

3

A. *Background*

Before trial, the prosecution filed an in limine motion to introduce Dominick's preliminary hearing testimony if she failed to appear at trial. On March 5, 2013, an evidentiary hearing was held examining the prosecution's efforts to secure Dominick as a witness at trial.

On February 21, 2013, with trial then set for March 4, prosecution investigator Brian Medeiros was directed to serve a subpoena on Dominick. The prosecutor provided Medeiros with identifying information and an address on 17th Street in Oakland. Medeiros checked a number of databases and conducted an internet search for contact information; these searches revealed a Richmond address from February 2012. On February 26, Medeiros went to the Richmond address and spoke with a woman who identified herself as Dominick's cousin, Trina. Trina stated Dominick was at work; Medeiros left his business card and asked Trina to tell Dominick to contact him about a subpoena for this case. Medeiros returned to the Richmond address later that day and spoke to a man who identified himself as Dominick's father, James Ellis. Ellis told Medeiros his impression was Dominick knew she had a court date and intended to go to court and say she wanted nothing done. Ellis also stated she "advised the court and said she might not be there." Medeiros left a copy of the subpoena and his business card with Ellis to give to Dominick. Medeiros also tried to locate Dominick at the 17th Street Oakland address, a work address, and various telephone numbers, but all were out of date.

On February 28, Medeiros learned that Dominick was living on 24th Street in Oakland. That afternoon, Medeiros went to that address and spoke with Dominick's daughter, who said her mother was not home. Medeiros left his business card with her for Dominick. The next day he went by the address on three separate occasions but saw no activity. He left a subpoena in the mailbox. Medeiros returned to the residence on March 4. There was no activity, and the subpoena was still in the mailbox. As of the date of the hearing, Dominick had not attempted to contact Medeiros.

4

At the conclusion of this hearing, the trial court ruled the prosecution had used reasonable diligence in trying to locate Dominick, and her preliminary hearing testimony could therefore be admitted if she failed to appear at trial. Three days later, on March 8, 2013, the prosecution served Dominick with a subpoena to appear for trial on March 11. She did not appear in court.

B. *Analysis*

"A criminal defendant has the right under both the federal and state Constitutions to confront the witnesses against him. [Citations.] This right, however, is not absolute. The high court recently reaffirmed the long-standing exception that '[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine.' [Citations.] Evidence Code section 1291 codifies this traditional exception.[2] [Citation.] When the requirements of Evidence Code section 1291 are met, 'admitting former testimony in evidence does not violate a defendant's right of confrontation under the federal Constitution. [Citations.]' [Citation.]" (*People v. Wilson* (2005) 36 Cal.4th 309, 340 (*Wilson*).)

"Evidence Code section 240, subdivision (a)(5), states a declarant is 'unavailable as a witness' if the declarant is '[a]bsent from the hearing and the proponent of his or her statement has exercised reasonable diligence but has been unable to procure his or her attendance by the court's process.' " (*Wilson, supra,* 36 Cal.4th at p. 341.) "The term 'reasonable diligence' or 'due diligence' under Evidence Code section 240, subdivision (a)(5) ' "connotes persevering application, untiring efforts in good earnest, efforts of a substantial character. [Citations.]" ' [Citation.] Considerations relevant to

---

2      Evidence Code section 1291, subsection (a)(2), provides former testimony is not inadmissible as hearsay if "the declarant is unavailable as a witness" and "[t]he party against whom the former testimony is offered was a party to the action or proceeding in which the testimony was given and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which he has at the hearing." Appellant does not contend he had insufficient prior opportunity to cross-examine Dominick.

5

this inquiry include the timeliness of the search, the importance of the proffered testimony, and whether leads of the witness's possible location were competently explored. [Citation.] We independently review a trial court's due diligence determination. [Citation.]" (*Ibid.*)

Appellant argues the efforts in this case are akin to those in *People v. Cromer* (2001) 24 Cal.4th 889 (*Cromer*), in which the prosecution failed to show reasonable diligence. In *Cromer*, the prosecution learned from patrolling officers months before trial that the witness was no longer living in her prior residence, yet made no serious effort to locate her until the month before trial. (*Id.* at p. 903.) The efforts, once they finally began, were lackluster: "After the case was called for trial . . . the prosecution obtained promising information that [the witness] was living with her mother in San Bernardino, but prosecution investigators waited two days to check out this information. With jury selection under way, an investigator went to [the witness's] mother's residence, where he received information that the mother would return the next day, yet the investigator never bothered to return to speak to [the witness's] mother, the person most likely [to] know where [the witness] then was." (*Id.* at p. 904.)

In contrast to *Cromer*, the prosecution had no reason to believe the contact information for Dominick was out of date until it tried to locate her. Moreover, Medeiros made more substantial efforts than were made in *Cromer*. He searched various records and pursued all possible leads. He left messages and his contact information with three separate people who appeared to be in regular contact with Dominick. He made multiple visits, at varying times of day, to addresses he believed might be Dominick's residence.

In any event, as the People note, appellant suffered no prejudice from any error in the trial court's ruling because Dominick was in fact served with a subpoena after the unavailability hearing, but still did not appear at trial. Even if the trial court had denied the prosecution's motion at the March 5 hearing, after successful service of the subpoena

6

it would have properly found Dominick unavailable and allowed the admission of her preliminary hearing testimony at trial.[3]

II. *Statement Regarding Appellant's Release From Jail*

Appellant argues the trial court erred in admitting, over appellant's objection pursuant to Evidence Code section 352, Johnson's testimony that Dominick told her at the football game she "was a little disturbed at the fact that [appellant] was released from jail and no one informed her. She had to find out by calling down to Santa Rita herself." We disagree.

Appellant argues evidence of a defendant's prior criminality or custodial status is highly prejudicial. However, any prejudicial effect was properly mitigated by the limiting instruction directing the jury to consider the statement only to determine the credibility of Dominick's preliminary hearing testimony, and not for the truth.

Appellant argues the limiting instruction was equivocal. The trial court instructed the jury three times regarding this testimony. Just before the testimony was elicited, the trial court stated it was being admitted "solely to determine and judge the credibility, meaning, the believability of the statements that you have heard given by Ms. Dominick" and was "not offered for the actual truth of the statements made themselves." After the testimony, the trial court reiterated the instruction: "the fact that [Dominick] was disturbed because the defendant had been released from jail and how she had learned that, that is the portion that you may consider solely and only for the limited purpose of determining the believability and credibility . . . of Ms. Dominick's statements." Finally, prior to deliberations the trial court again instructed the jurors they could only consider the challenged statement "in deciding whether to believe the testimony of Kiana Dominick that was read here at trial" and "may not use [the statement] as proof that the

---

[3] Appellant argues he was nonetheless prejudiced because, had the trial court found the prosecution's efforts inadequate at the March 5 hearing, the prosecution might have sought a bench warrant and actually secured Dominick's presence at trial. We are not persuaded by this speculation, and note appellant does not contend the issuance of a bench warrant after service of the subpoena would have been necessary to constitute reasonable diligence.

information contained in [it] is true." Appellant contends the second instruction is "highly likely to have planted the truth of the jail evidence solidly in the jurors' minds." We disagree. The instruction directs the jury to consider the statement solely in determining Dominick's credibility. Moreover, the other two instructions unambiguously state the jury cannot consider the statement for the truth. (See *People v. Huggins* (2006) 38 Cal.4th 175, 192 [" ' " '[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge' " ' "].)

Appellant contests the overall efficacy of limiting instructions, but we presume the jury follows them. (*People v. Hinton* (2006) 37 Cal.4th 839, 871.) Appellant also points to the prosecution's reliance on this testimony in closing argument. But the prosecutor properly reiterated the evidence was not admitted for the truth.

The statement expressed Dominick's fear of appellant about one month after the assault, and was probative in determining the credibility of Dominick's preliminary hearing testimony. Its admission was not an abuse of discretion. (*People v. Harris* (2008) 43 Cal.4th 1269, 1288-1289.)

III. *Ineffective Assistance of Counsel*

Appellant contends his trial counsel was ineffective for failing to object to the testimony of Téllez and Kim regarding statements made by Dominick on the night of the assault. No limiting instruction was given with respect to this testimony.

" ' "[I]n order to demonstrate ineffective assistance of counsel, a defendant must first show counsel's performance was 'deficient' because his 'representation fell below an objective standard of reasonableness . . . under prevailing professional norms.' [Citations.] Second, he must also show prejudice flowing from counsel's performance or lack thereof. [Citations.] Prejudice is shown when there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " ' [Citations.]" (*In re Thomas* (2006) 37 Cal.4th 1249, 1256.)

We need not decide whether counsel's failure to object was deficient because no prejudice resulted from her failure to object to the challenged testimony. (See *In re Cox*

(2003) 30 Cal.4th 974, 1019 [" 'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies' "].)  As an initial matter, Dominick's statements to Johnson on the night of the assault were indisputably the most detailed and damaging statements by Dominick against appellant.  The challenged statements to Téllez and Kim were entirely cumulative to these statements.

Moreover, appellant does not dispute that, had Téllez's trial testimony about Dominick's hearsay statements been excluded, his preliminary hearing testimony about the same statements could have been admitted at trial.  (See Evid. Code, § 1294, subd. (a)(2) ["The following evidence of prior inconsistent statements of a witness properly admitted in a preliminary hearing or trial of the same criminal matter pursuant to Section 1235 is not made inadmissible by the hearsay rule if the witness is unavailable and former testimony of the witness is admitted pursuant to Section 1291: . . . A transcript, containing the statements, of the preliminary hearing or prior proceeding concerning the same criminal matter"]; *People v. Martinez* (2003) 113 Cal.App.4th 400, 408 [Evid. Code, § 1294 allows "the statement of a person, who is unavailable as a witness, to be introduced as evidence in court if the statement was previously introduced at a hearing or trial as a prior inconsistent statement of the witness"].)  Téllez's testimony about Dominick's statements was substantially the same at the preliminary hearing and at trial.  Thus, even if Téllez's trial testimony were not allowed for the truth, his preliminary hearing testimony about the same statements would have been so allowed.[4]  Although Kim did not testify at the preliminary hearing, his testimony about Dominick's hearsay statements was brief and cumulative to the testimony of Téllez and Johnson.

Finally, appellant does not contest the challenged statements to both Téllez and Kim could have been admitted for impeachment purposes.  Even if the statements had not

---

[4] While appellant argues live testimony is "more compelling," we do not find the difference would be significant with respect to this testimony, which consisted of only a few statements and was cumulative to Dominick's statements to Johnson on the night of the assault.

been admitted for the truth, their use as impeachment would have been damaging to the credibility of Dominick's preliminary hearing testimony.

DISPOSITION

The judgment is affirmed.


_____

SIMONS, Acting P.J.


We concur.



_____

NEEDHAM, J.



_____

BRUINIERS, J.