76 Cal.Rptr.2d 38 (1998)
64 Cal.App.4th 1122
The PEOPLE, Plaintiff and Respondent,
v.
David LOPEZ, Defendant and Appellant.
No. B115397.
Court of Appeal, Second District, Division Six.
June 15, 1998.
Review Denied September 23, 1998.
Patrick J. Reardon, Santa Paula, for Defendant and Appellant.
Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Senior Assistant Attorney General, Robert F. Katz, Supervising Deputy Attorney General, Thomas C. Hsieh, Deputy Attorney General, for Plaintiff and Respondent.
GILBERT, Associate Justice.
David Lopez was convicted after a court trial of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)), battery with serious bodily injury (Pen.Code, § 243, subd. (d)) and unlawful driving or taking of a vehicle (Veh.Code, § 10851, subd. (a)).
The sole contention on appeal is that the trial court erred in admitting the victim's preliminary hearing testimony. (Evid.Code, § 1291.) Lopez argues that the victim was not unavailable as a witness because the prosecution failed to use reasonable diligence to procure her attendance. (Evid.Code, § 240, subd. (a)(5).) We affirm.

FACTS
David Lopez and Danielle M. had dated for five years. On February 1, 1997, Danielle was talking on the telephone in Lopez's bedroom. Lopez entered the room and, without *39 saying anything, hit her in the face with his fist. Danielle fell to the ground. Lopez hit her with the telephone headset, punched her in the eye and put her in a headlock. When Danielle tried to flee through the door, Lopez threw a metal chair, striking her. Then Lopez grabbed her neck and tried to choke her.
The beating stopped when Danielle bit Lopez on the finger. Lopez said he was sorry and took her to the hospital. She was bleeding a lot. She had a broken nose and a fractured orbit with scarring on her nose and around her right eye. The emergency room doctor described her injuries as life threatening.
Hospital personnel called the police. Lopez was still at the hospital when the police arrived. He was nervous and uncooperative when asked about Danielle's injuries. Lopez's hands were swollen and cut. The police arrested him.
Danielle knew that the car in which Lopez drove her to the hospital was stolen. The police found the car in the hospital parking lot. Rosario Magana identified the car as his. He said it had been missing since December, 1996. Magana did not know Lopez, and had not given him permission to drive the car.
On April 29, 1997, the prosecution subpoenaed Danielle for trial. The trial began on May 27, 1997. On Thursday, May 29, 1997, the prosecutor told the trial court that he understood Danielle was in Las Vegas and that she would be present on Monday. Lopez objected to the matter being continued, but his counsel stated he believed Danielle had information favorable to the defense. The trial court granted the continuance.
On Monday, June 2, 1997, the prosecutor told the court that Danielle was unavailable and offered her testimony from the preliminary hearing. The trial court held a hearing on Danielle's unavailability and the prosecution's efforts to obtain her presence at trial.
George Salazar, an investigator with the district attorney's office, testified that he last spoke with Danielle on April 23, 1997. He had no reason to believe she would not be in court. He learned on May 28, 1997, that she was not returning telephone calls. Salazar called her residence, left a message on her voice mail and went to her address that day. He was unable to find her.
Salazar then went to Danielle's grandfather's residence. Her grandfather told Salazar that Danielle had gone to Las Vegas to bring back a child. The grandfather gave Salazar a possible address for Danielle in Las Vegas. Salazar testified he did not verify the address, or make a call to the Las Vegas police or call anyone else to determine whether Danielle actually was living at the address. Salazar explained, "This information just came before coming to court."
The prosecutor made an unsworn representation to the court that he had spoken to a victim advocate on Tuesday or Wednesday of the week prior to trial. The advocate informed the prosecutor that he had spoken with Danielle and told her she would be needed Tuesday or Wednesday of the week trial started. Danielle gave no indication she would not be available.
The prosecutor also represented that he spoke to Danielle's grandfather after he found out Danielle could not be contacted. Initially, the grandfather told him he did not know when Danielle would return. Later, the grandfather told the prosecutor that she would be available on May 28, 1997. Danielle's aunt told the prosecutor that Danielle was aware of the subpoena and the court proceedings, but she left unexpectedly without informing the aunt. The aunt did not know when she would return.
The trial court admitted Danielle's testimony at the preliminary hearing into evidence, finding she was unavailable for trial. In so finding, the court stated the prosecution had every reason to believe Danielle would be present at trial and it used "due diligence" to locate her from the time she failed to return the prosecution's calls.

DISCUSSION
If a witness is unavailable, the hearsay rule does not preclude evidence of the witness's former testimony. (Evid.Code, § 1291.) A witness is unavailable when the witness is "[a]bsent from the hearing and the proponent of his or her statement has exercised *40 reasonable diligence but has been unable procure his or her attendance by the court's process." (Evid.Code, § 240, subd. (a)(5).)
There is some question as to the standard of review of a trial court's determination of unavailability of a witness. In People v. Watson (1989) 213 Cal.App.3d 446, 261 Cal.Rptr. 635, we upheld the trial court's admission of a prosecution witness's preliminary hearing testimony and affirmed the judgment. The standard of review was not an issue in that case but we exercised our independent judgment to decide that the prosecution used due diligence in trying to obtain the witness's presence. We relied on dictum in People v. Louis (1986) 42 Cal.3d 969, 982, 232 Cal.Rptr. 110, 728 P.2d 180, in which our Supreme Court stated that the appropriate standard of review for such a question may be independent review rather than abuse of discretion. Louis did not resolve the issue, but concluded that under its facts the admission of preliminary hearing testimony was proper under either standard. (Id., at p. 989, 232 Cal.Rptr. 110, 728 P.2d 180.)
In People v. Hovey (1988) 44 Cal.3d 543, 563, 244 Cal.Rptr. 121, 749 P.2d 776, our Supreme Court acknowledged that Louis "suggested (but did not decide) that an appellate court should independently review the record on the due diligence issue." Like Louis, Hovey did not decide the issue, but concluded that under either the abuse of discretion test or the independent review test, "the trial court's finding of due diligence should be upheld." (Hovey, supra, at p. 564, 244 Cal.Rptr. 121, 749 P.2d 776.)
In People v. McElroy (1989) 208 Cal. App.3d 1415, 1426, 256 Cal.Rptr. 853, the appellate court concluded that Hovey apparently applied the abuse of discretion test in reaching its decision. That is because Hovey noted that the trial court's finding of due diligence was "supported by substantial evidence." (People v. Hovey, supra, 44 Cal.3d at p. 562, 244 Cal.Rptr. 121, 749 P.2d 776.)
In People v. Turner (1990) 219 Cal.App.3d 1207, 1214, 268 Cal.Rptr. 686, the appellate court took us to task for citing the Louis dictum in Watson without discussion or analysis. Turner, relying on what it sees as the Supreme Court's guidance, embraces the abuse of discretion standard with a certainty that seems based on wishful thinking. In our view the standard of review is far from settled by our Supreme Court.
In People v. Price (1991) 1 Cal.4th 324, 424, 3 Cal.Rptr.2d 106, 821 P.2d 610, our Supreme Court, citing Hovey, once again stated, "This court has not decided the standard of review for a trial court's determination on the issue of reasonable diligence...." But in People v. Cummings (1993) 4 Cal.4th 1233, 1296, 18 Cal.Rptr.2d 796, 850 P.2d 1, our Supreme Court again stated that the independent review standard "might be appropriate" and then decided the due diligence issue by way of an independent review of the record.
No doubt Turner would be vexed with Cummings for its failure to discuss or analyze the standard of review. The People urge us not to follow Cummings because it "did not engage in an in-depth analysis or state its reasons for applying the independent review standard." Perhaps Cummings was persuaded, as were we, by the lengthy discussion in Louis concerning the appropriate standard of review for deciding mixed questions of law and fact.
Louis, relying on what it had implied in People v. Leyba (1981) 29 Cal.3d 591, 174 Cal.Rptr. 867, 629 P.2d 961, concluded that the proper standard of review on the issue of due diligence, which involves mixed questions of law and fact, is a two-step process. The first step involves questions of fact decided by the trial court. They will not be disturbed on appeal when supported by substantial evidence. The second step involves the application of the law to the facts which requires the court to exercise its independent judgment. (People v. Louis, supra, 42 Cal.3d at p. 985, 232 Cal.Rptr. 110, 728 P.2d 180.) Louis relied heavily on United States v. McConney (9th Cir.1984) 728 F.2d 1195, 1199-1204 (in bank) certiorari denied 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46, which stressed that de novo review is particularly justified when mixed questions of law and fact implicate constitutional rights.
*41 McConney concluded that application of the probable cause standard requires independent review because the inquiry "goes well beyond the facts of the case and requires consideration of the abstract legal principles that inform constitutional jurisprudence." (United States v. McConney, supra, 728 F.2d at p. 1203.) Louis adopted the McConney reasoning. "Applying the McConney functional analysis to the case at hand, it appears that the issue of due diligence in procuring a witness's attendance is subject to independent review." (People v. Louis, supra, 42 Cal.3d at p. 988, 232 Cal. Rptr. 110, 728 P.2d 180.)
Our colleagues in McElroy and Turner make a cogent argument that the proper standard of review on the issue of unavailability of a witness is abuse of discretion. Nevertheless, we are not prepared to scuttle the independent review standard which we adopted with such equanimity in Watson. The dicta in Louis is as persuasive to us as it was to the Cummings court. Dicta should not necessarily be disregarded. (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 947, pp. 989-991.)
Unfortunately, we cannot definitively resolve the issue. It is apparently no comfort to anyone, least of all Lopez, for us to conclude, as we do, that under whatever standard we use, the trial court was correct.
Here Danielle was subpoenaed by the prosecution on April 29, 1997. The prosecution had no information she would not appear until May 28. The prosecution went to her residence and contacted her grandfather and aunt. The prosecution learned Danielle was in Las Vegas, but had no address until shortly before the hearing on her unavailability. That is sufficient reasonable diligence to support the admission of Danielle's preliminary hearing testimony.
Lopez raises a number of points in his challenge to the finding of reasonable diligence.
First, Lopez points out it was more than a month since the prosecution last communicated with Danielle. But the prosecution had no reason to believe she would not cooperate. She testified at the preliminary hearing and was under subpoena to testify at trial. The circumstances presented no reason to keep in closer contact.
Second, Lopez points out that the prosecution learned Danielle was not in the area on May 28, but did not bring this information to the attention of the court or the defense. The prosecution brought the matter to the attention of the court and the defense at least by May 29 when the prosecution moved for a continuance. There is nothing to indicate that any delay was unreasonable or that it caused prejudice to the defense. The defense's claim that Danielle had important information favorable to the defense is belied by Lopez's opposition to the continuance.
Third, Lopez argues that even after Salazar obtained a Las Vegas address he chose to do nothing with it. But, as we read Salazar's testimony, he had no time to do anything with it prior to the hearing on Danielle's unavailability. He testified "this information came just before coming to court."
Moreover, the prosecution was not required to do everything possible to procure Danielle's attendance; it was only required to use reasonable diligence. There is nothing to indicate that had the prosecution been able to verify Danielle's Las Vegas address she would have returned in time to testify. That the reason given for Danielle's trip to Las Vegas may have had nothing to do with the trial does not mean the prosecution could have obtained her timely return. Had Danielle been anxious to testify, she had plenty of time before June 2, 1997, to contact the prosecutor and make arrangements to appear.
The judgment is affirmed.
STEVEN J. STONE, P.J., and YEGAN, J., concur.