Filed 5/18/15  P. v. Cunningham CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D065699 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD252519) |
| DORIAN RHAMONE CUNNINGHAM, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Melinda J. Lasater, Judge.  Affirmed.

Sheila O'Connor, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, Junichi P. Semitsu and Christen Somerville, Deputy Attorneys General.

A jury convicted Dorian Rhamone Cunningham of pimping (Pen. Code,[1] § 266h, subd. (a)) and simple assault (§ 240). In bifurcated proceedings, the trial court found true allegations Cunningham had suffered prior convictions for robbery (§ 211) and criminal street gang activity (§ 186.22, subd. (b)(1)), which were serious or violent felonies. (§§ 667, subds. (b)-(i), 668.) It sentenced Cunningham to a total of eight years, consisting of the middle term of four years on the pimping conviction, doubled under the "Three Strikes" law.

Cunningham contends the court erroneously admitted preliminary hearing testimony from the victim, Andrea Cox, in violation of Cunningham's state and federal constitutional rights to confrontation. He also contends that absent Cox's preliminary hearing testimony, her statements to the police regarding his role in her prostitution activities was the only evidence to support the pimping conviction, and those statements were inadmissible hearsay. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Cunningham and Cox had a romantic relationship for four years. Cox struggled to support her two children from a different relationship. Cunningham had suggested Cox engage in prostitution, but she refused. Cox later struggled financially and started engaging in prostitution to make money.

On November 27, 2013, Cunningham punched Cox multiple times in the face, splitting her lip. Cox left the house, walked to a nearby gas station and phoned the

---

[1]     All statutory references are to the Penal Code unless otherwise specified.

police, who arrested Cunningham. San Diego Police Officer David Abrams interviewed Cox, who related she had prostituted herself for one month and made approximately $800, which she gave to Cunningham. Cox told San Diego Police Officer Vincent Bales that Cunningham had initially raised the topic of prostitution with her and when she declined, he ignored her. Cox added that Cunningham took photos for her online prostitution advertisements and provided her with condoms. Bales testified as an expert that when Cox did "in-calls, [Cunningham] would be close by. . . . She didn't say she knew where he was, but that's very typical in my experience that the pimp will be close. Typically they'll sit out in the car or on a bus stop close to the hotel to provide security. In this case Ms. Cox actually testified and told three different people at one point Mr. Cunningham had to intervene." Bales concluded Cunningham was Cox's pimp, and Cunningham's conduct evinced "part of the manipulation" a pimp exerted over someone engaging in prostitution.

At a December 17, 2013 preliminary hearing, Cox was granted immunity from prostitution charges and testified against Cunningham. She initially refused to answer certain prosecution questions but relented after the court threatened her with contempt. Immediately following her testimony that day, the People served Cox with a subpoena to appear at Cunningham's trial on February 5, 2014.

On February 5, 2014, Cunningham was unwilling to waive time for his trial to start or abide by an agreement between his counsel and the prosecutor to continue the

3

trial.[2]  Cox failed to appear and the court issued a bench warrant for her arrest.  The People argued Cox was unavailable and requested her preliminary hearing testimony be read into the record.

The People's paralegal testified she spoke with Cox eight days before trial and confirmed Cox's address, but did not specifically remind her of the trial start date.  The day before trial, the People twice attempted to contact Cox by phone to offer her transportation to trial, but they were unable to leave her a message.

Cunningham objected to Cox's prior testimony being read into the record, arguing that doing so violated his Sixth Amendment right to confrontation.  The court concluded the People had exercised diligence by subpoenaing Cox within the statutory period and telephoning her eight days before trial.  The court added:  "[The People] didn't just wait until [Cox] didn't show up today, but she didn't show up today.  They asked for the bench warrant.  They have the bench warrant and they—I'm assuming they will continue to try to reach her and to have her come in . . . but I don't think that they were obligated yesterday afternoon when she didn't pick up the phone to send somebody out.  [¶]  They weren't obligated to send somebody else out this morning.  Besides, until she doesn't show up, they don't have the authority to arrest her and bring her in."  The court declared

---

[2]  The prosecutor argued that at the previous readiness hearing the parties had agreed that on the first day of trial they would continue the case, and they chose that date precisely to ensure Cox would appear; if she failed to appear, the People had planned to issue a warrant to secure her appearance at the continued start date of trial:  "Again, because Mr. Cunningham—which is his right to do—demand[s] trial notwithstanding [a] good cause motion by the defense attorney.  We don't have time now to do more than what we have already done.  [¶]  And in that regard the People have gone above and beyond what is required for due diligence in this instance."

Cox an unavailable witness and ordered her preliminary hearing testimony read into the record.

DISCUSSION

Cunningham contends his conviction for pimping must be reversed because the prosecution failed to exercise due diligence to secure Cox's presence at trial; therefore, the court violated his confrontation right by admitting her preliminary hearing testimony. He specifically argues: "Previously for the preliminary hearing, the prosecutor had provided transportation to [Cox] and her children, but no offer was made to [her] the week before trial. Then the two other lame attempts at contact were made the day before trial within 30 minutes of each other and both calls resulted in one ring and then a dead phone. No messages were left; no other phone calls were attempted and no further investigation was instigated. No one was sent to the address to determine whether [Cox] lived there, now [sic] were any further investigatory methods used to try to locate Ms Cox's, an admitted prostitute, whereabouts, [sic] like any computerized database searches. [¶] Finally, even though Mr. Cunningham would not waive time for trial, there was still ten days [sic] remaining to begin the trial and the prosecutor made no request for [a] short continuance nor did the court suggest a continuance to allow further efforts to be made."

Both the federal and state Constitutions guarantee a criminal defendant the right to confront the prosecution's witnesses. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15.) "The right of confrontation 'seeks "to ensure that the defendant is able to conduct a 'personal examination and cross-examination of the witness, in which [the defendant] has

5

an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.' " [Citation.] To deny or significantly diminish this right deprives a defendant of the essential means of testing the credibility of the prosecution's witnesses, thus calling "into question the ultimate ' "integrity of the fact-finding process." ' " ' " (*People v. Herrera* (2010) 49 Cal.4th 613, 620-621 (*Herrera*).) The confrontation right has its limits. Unavailable witnesses may have testimony that was subject to cross-examination admitted if they gave that testimony in a previous court proceeding against the same defendant and the prosecution made a good faith effort to have the witness present at trial. (*People v. Fuiava* (2012) 53 Cal.4th 622, 674-675 (*Fuiava*).)

California codified this exception to confrontation rights for prior recorded testimony in Evidence Code section 1291, subdivision (a): "Evidence of former testimony is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and: [¶] . . . [¶] (2) The party against whom the former testimony is offered was a party to the action or proceeding in which the testimony was given and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which he has at the hearing." A witness is unavailable if "[a]bsent from the hearing and the proponent of his or her statement has exercised reasonable diligence" in attempting to procure his or her presence by the court's process. (Evid. Code, § 240, subd. (a)(5).) Although Evidence Code section 240 refers to "reasonable diligence,"

courts have often described the analysis as one of "due diligence" or a "good-faith effort." (*People v. Bunyard* (2009) 45 Cal.4th 836, 848-849.)

"We have said that the term 'due diligence' is 'incapable of a mechanical definition,' but it 'connotes persevering application, untiring efforts in good earnest, efforts of a substantial character.' [Citations.]  Relevant considerations include ' "whether the search was timely begun" ' [citation], the importance of the witness's testimony [citation], and whether leads were competently explored."  (*People v. Cromer* (2001) 24 Cal.4th 889, 904.)  State and federal requirements do not vary here.  (*Herrera*, *supra*, 49 Cal.4th at p. 622; *Fuiava*, *supra*, 53 Cal.4th at p. 675.)  The due diligence requirement also applies to preventing a present witness from becoming absent.  (*People v. Roldan* (2012) 205 Cal.App.4th 969, 978.)

We review the resolution of disputed facts under the substantial evidence standard, and independently review whether the facts demonstrate prosecutorial good faith and due diligence; no deference is given to the trial court's determination.  (*Herrera*, *supra*, 49 Cal.4th at p. 623; *People v. Cromer*, *supra*, 24 Cal.4th at pp. 900-901.)

In *People v. Lopez* (1998) 64 Cal.App.4th 1122, the court found the People had exercised due diligence in trying to secure a witness's presence at trial despite not having communicated with the witness more than one month before trial.  (*Id.* at p. 1128.)  The witness, who had been beaten by her boyfriend of five years, was declared unavailable after the prosecution established they met their burden of due diligence.  (*Id.* at p. 1125.) The court reasoned the prosecution had subpoenaed her in advance of trial, she testified at the preliminary hearing, and the prosecution had "no reason to believe she would not

7

cooperate" by testifying again at the trial. (*Ibid.*) The prosecution was unaware the witness was not returning phone calls and when it found out, an investigator called her residence, left a message, and went to her address that same day. (*Ibid.*) The People sought and received an extension so they could try to locate the witness. (*Id.* at p. 1127.)

Here, we conclude the People exercised due diligence in attempting to secure Cox's presence at trial. She testified at the preliminary hearing and gave no indication she was unwilling to appear at trial. As in *Lopez*, *supra*, 64 Cal.App.4th 1122, Cox was subpoenaed for a date certain within the statutory period. The People spoke to Cox eight days before trial and confirmed her address. Again, Cox gave no indication that she was unwilling or unable to testify at trial. The People twice telephoned Cox on the day before trial. The People did not send someone to Cox's address earlier because they had no basis to think she would fail to appear. We point out Cunningham refused to waive time for his trial to start, thus limiting what more the People could do to compel Cox's presence at trial.

Cunningham argues the People were on notice that at the preliminary hearing Cox was uncooperative, leading the court to threaten her with contempt; therefore, the People should have made more efforts to secure her presence at trial. But Cox ultimately answered the questions and at no time indicated she might fail to appear at trial. Moreover, "[t]he prosecution is not required 'to keep "periodic tabs" on every material witness in a criminal case . . . .' [Citation.] Also, the prosecution is not required, absent knowledge of a 'substantial risk that this important witness would flee,' to 'take adequate preventative measures' to stop the witness from disappearing." (*People v Wilson* (2005)

8

36 Cal.4th 309, 342.) The People are not required to take preventative measures to stop a witness from disappearing unless there is knowledge of a substantial risk that the witness would flee. (*Id.* at p. 342.) Further, an appellate court "will not reverse a trial court's determination [of reasonable diligence] simply because the defendant can conceive of some further step or avenue left unexplored by the prosecution" and "the defendant's ability to suggest additional steps (usually, as here, with the benefit of hindsight) does not automatically render the prosecution's efforts 'unreasonable.' [Citations.] The law requires only reasonable efforts, not prescient perfection." (*People v. McElroy* (1989) 208 Cal.App.3d 1415, 1428, overruled on other grounds as stated in *People v. Cromer*, *supra*, 24 Cal.4th at p. 905, fn. 3.)

We conclude the court did not violate Cunningham's state and federal constitutional rights by permitting Cox's preliminary hearing testimony to be read into the record. In light of our resolution of this issue, we need not address Cunningham's alternative contention that Cox's statements to the police were inadmissible hearsay.

DISPOSITION

The judgment is affirmed.

_____

O'ROURKE, J.

WE CONCUR:

_____

BENKE, Acting P. J.

_____

NARES, J.