Filed 11/18/24  P. v. Meier CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>JACY MICHAEL MEIER,<br><br>　　　Defendant and Appellant. | A167084<br><br>(Contra Costa County<br>Super. Ct. No. 022200741) |

A jury convicted Jacy Michael Meier of various offenses related to his breaking into and taking items from a smoke shop in San Pablo.  On appeal, Meier contends the trial court erred by finding a prosecution witness unavailable to testify at trial, admitting an accomplice's statements under the statement against interest exception to the hearsay rule, and allowing a police officer to identify him as the perpetrator from surveillance footage.  We disagree and affirm.

**BACKGROUND**

Early one morning in August 2022, a police officer noticed the front security frame of a smoke shop completely torn off.  Broken glass was on the floor, and an unknown person had rummaged through the cash register area.  An automated teller machine (ATM) was partially pried open and dented in several places.

1

The store's surveillance footage revealed a stolen black Chevrolet Tahoe backing up in front of the store earlier that morning. A tall person wearing a black hooded sweatshirt, black hat, black shorts, visible blue underwear, and black tennis shoes exited the vehicle and peered into the store's windows. The person and a shorter accomplice wearing a grey hooded sweatshirt tied heavy chains from the car's tow hitch to the security door frame. The car drove forward, tearing off the security frame and door. The men entered the store wearing blue latex gloves. The shorter man took fabric softener, detergent, clothing — such as sweaters, T-shirts, and thermals — cigarettes, and lighters, and loaded them into the car. Meanwhile, the taller man attempted to extract the ATM out of the ground. The men eventually gave up trying to steal the ATM and drove away.

While officers reviewed the surveillance footage, another officer located the suspected vehicle at a nearby apartment complex. It had a red tow hitch, the same color as in the surveillance footage. A search of the vehicle revealed blue latex gloves, cartons of cigarettes, lighters, as well as a "chain with a pry" located on the front passenger floorboard. Meier's DNA was found on a glove on the driver's seat. Officers entered an apartment and detained Meier, who was wearing a black tank top, dark shorts, and blue underwear. Inside the apartment, officers found a gun, cartons of cigarettes that matched inventory taken from the smoke shop, detergent, and articles of clothing that were still in their packaging.

At the apartment, officers spoke with Russell Matson, who had just been discharged from the hospital after experiencing a fentanyl overdose. He was nonetheless responsive and articulate. He expressed frustration with Meier, who often stayed in Matson's apartment, who he said was aggressive, frequently carried firearms, and threatened him with a gun numerous times.

2

Matson told police that, upon returning home from the hospital, he discovered Moriel Lacsina, Meier's alleged accomplice, sitting in the living room rummaging through brand new sweatshirts, T-shirts, and cigarettes. When Matson asked where the items came from, Lacsina explained he and Meier committed a commercial burglary in which they tried to steal an ATM. When shown still shots of the smoke shop's surveillance footage, Matson immediately identified Meier as one of the perpetrators based on his distinctive posture. He also noted seeing Meier driving a Chevrolet Tahoe recently.

The district attorney charged Meier with burglary (§ 459, count one; undesignated statutory references are to this code); grand theft of personal property (§ 487, subd. (a), count two); receiving stolen property with a value over $950, enhanced by a prior auto theft conviction (§§ 496, subd. (a), 666.5, count three); unlawful driving or taking a vehicle without consent, enhanced by a prior auto theft conviction (Veh. Code, § 10851, subd. (a); Pen. Code, § 666.5, count four); and receiving a stolen motor vehicle (§§ 496d, subd. (a), 666.5, count five).

At a preliminary hearing, Matson recanted his prior statements to the police. According to Matson, he was not fully aware during the interview, denied that Meier threatened him with a gun, and he did not recall any statements made to police. At the jury trial, the trial court found Matson unavailable to testify at trial because he could not be located. As a result, the prosecution read his preliminary hearing testimony to the jury. The court also allowed an officer to testify about Matson's statements made during the police interview immediately after the burglary, including concerning Lacsina's statement that he and Meier burglarized a store. In addition, the

3

officer opined that the taller figure wearing the black hooded sweatshirt in the surveillance footage was Meier.

A jury found Meier guilty of his charged offenses.[1]

## DISCUSSION

Meier contends the trial court made several erroneous evidentiary rulings, which individually and cumulatively require reversal. We disagree.

### I.

Meier contends admitting Matson's preliminary hearing testimony violated his right to confront the prosecution's witness. According to Meier, the prosecution failed to establish it exercised due diligence in securing Matson's attendance at trial and this prior testimony was thus inadmissible. We are unpersuaded.

The prosecutor issued a subpoena for Matson to testify at trial, but he did not appear. Matson had confirmed his appearance to the prosecutor one court day prior. And the prosecutor's office had been in contact with Matson throughout the trial, trailing him with subpoenas to be present in court on specific dates. Investigators searched for him. On that basis, the trial court issued a no-bail warrant for Matson's arrest.

The following day, the prosecutor reported that she was unable to locate Matson despite multiple officers and inspectors searching for him. Various officers testified to their efforts to locate Matson — searching his last known address, speaking with neighbors and his prior landlord who disclosed Matson had been evicted two months prior, conducting undercover

---

[1] The district attorney also charged Meier with unlawful possession of a firearm (§ 29800, subd. (a)(1)); and unlawful possession of ammunition (§ 30305, subd. (a)(1)) — both counts on which the jury found Meier not guilty.

4

surveillance of other known residences, and identifying and surveilling vehicles associated with Matson. In addition, officers viewed Matson's social media accounts on which he was posting photos of his current jobsite throughout the day, but officers were unable to identify the location. The officers' attempt to find him through Employment Development Department (EDD) records similarly failed. In addition, officers called Matson 13 times, leaving voice messages.

The prosecutor also testified regarding her efforts to find Matson. She called him four to five times from both her office line and a Google voice number, but he failed to answer. Instead, he responded with text messages stating, " 'I moved' " and " 'I just can't do it anymore. I don't want to be involved anymore. I want nothing to do with this.' " Ultimately, the trial court determined the prosecutor exercised due diligence to procure Matson's appearance in court, and it authorized the prosecution to read Matson's preliminary hearing testimony to the jury. We find no error in the court's ruling.

Criminal defendants have the right to confront the prosecution's witnesses. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15; *People v. Cromer* (2001) 24 Cal.4th 889, 892.) "That right is not absolute, however. An exception exists when a witness is unavailable and, at a previous court proceeding against the same defendant, has given testimony that was subject to cross-examination." (*Cromer*, at p. 892; Evid. Code, § 1291, subd. (a)(2).) The prosecution may introduce a witness's prior testimony if it demonstrates it exercised reasonable diligence — often referred to as due diligence indicating "persevering application, untiring efforts in good earnest, efforts of a substantial character" — but inability to procure the witness's attendance at trial. (*People v. Linder* (1971) 5 Cal.3d 342, 347; Evid. Code,

5

§ 240, subd. (a)(5); *Cromer*, at p. 892; *People v. Herrera* (2010) 49 Cal.4th 613, 623 [proponent of the evidence must demonstrate unavailability].) "Considerations relevant to this inquiry include the timeliness of the search, the importance of the proffered testimony, and whether leads of the witness's possible location were competently explored." (*People v. Wilson* (2005) 36 Cal.4th 309, 341.) Where the facts are undisputed, we independently review the trial court's due diligence determination. (*People v. Fuiava* (2012) 53 Cal.4th 622, 675.)

This record reflects the prosecution exercised due diligence to locate Matson. The prosecutor had been in daily contact with Matson before he was required to testify. (Compare with *People v. Avila* (2005) 131 Cal.App.4th 163, 169 [no due diligence where party waited until morning of beginning of trial to locate witness after being out of communication for several months prior].) After Matson failed to appear, the prosecutor immediately notified the court, initiated an investigation of his location in a timely manner, and sought a no-bail warrant. (*People v. Lopez* (1998) 64 Cal.App.4th 1122, 1128 [due diligence demonstrated by notifying court and investigating witness location within one day of learning a witness had absconded].) Investigators reviewed Matson's EDD records to identify his places of employment, surveilled Matson's previous known addresses, and searched for other possible residences. (*People v. Wilson*, *supra*, 36 Cal.4th at pp. 341–342 [reviewing public records and residences to locate witness showed diligence].) They repeatedly called Matson and searched for his location through his social media websites. (*People v. Andrade* (2015) 238 Cal.App.4th 1274, 1294.)

Moreover, it is clear Matson "purposely made [himself] unavailable because [he] was unwilling to testify" and was unlikely to cooperate with

6

additional efforts. (*People v. Diaz* (2002) 95 Cal.App.4th 695, 706 [finding due diligence in part where witness made herself unavailable].) Matson admitted to avoiding the prosecution's efforts to locate him, noting that he moved and did not want to be involved in the case. The prosecution's efforts to locate Matson were "timely, reasonably extensive and carried out over a reasonable period." (*People v. Bunyard* (2009) 45 Cal.4th 836, 855–856.)

Although Meier acknowledges there is no requirement " 'to keep "periodic tabs" on every material witness in a criminal case,' " he nonetheless contends the prosecution did not exercise due diligence because it failed to use reasonable means to prevent Matson from absconding. (*People v. Wilson*, *supra*, 36 Cal.4th at p. 342.) According to Meier, the prosecutor was aware Matson presented a flight risk because he had overdosed on fentanyl, Meier threatened Matson with a gun, and at the preliminary hearing Matson recanted prior incriminating statements about him. But these instances did not create knowledge of a " 'substantial risk that this important witness would flee,' " requiring adequate measures to prevent Matson's disappearance. (*Ibid.*) The prosecutor testified her staff was in daily contact with him throughout the trial, including after his overdose. (*People v. Bunyard, supra*, 45 Cal.4th at p. 853.) She subpoenaed him and, before trial, he confirmed he would appear in court despite Meier's alleged threat. To the extent he recanted incriminating portions of his statements to officers, the prosecution could reasonably believe he would appear but would simply undermine its case, just as he did during the preliminary hearing. Nothing indicates these issues "generally created the risk" that Matson "would permanently disappear." (*People v. Friend* (2009) 47 Cal.4th 1, 68.)

Based on the foregoing, the prosecution exercised reasonable diligence in trying to locate Matson. The trial court did not err in finding Matson was

7

unavailable as a witness, and admitting his prior testimony did not violate Meier's right to confront witnesses. (*People v. Brown* (2003) 31 Cal.4th 518, 545 [the "routine application of state evidentiary law does not implicate defendant's constitutional rights"].)

## II.

Meier next contends the trial court erred by admitting Lacsina's hearsay statements to Matson that he and Meier burglarized a store — statements that Matson subsequently relayed to police. The court admitted Lacsina's statement as a declaration against interest. We see no abuse of discretion in the court's ruling. (*People v. Landau* (2016) 246 Cal.App.4th 850, 866 [abuse of discretion standard of review for hearsay rulings].)

Hearsay, an out-of-court statement admitted for its truth, is generally inadmissible unless an exception applies. (Evid. Code, § 1200; *People v. Flinner* (2020) 10 Cal.5th 686, 735.) One exception is a declaration against interest — a statement that when made was so far against the declarant's penal or other interests " 'that a reasonable person would not have made the statement unless' " that person believed it to be true. (*People v. McDaniel* (2021) 12 Cal.5th 97, 132; Evid. Code, § 1230.) The proponent of this evidence must demonstrate the declarant is unavailable, "the declaration was against the declarant's penal interest when made," and "the declaration was sufficiently reliable to warrant admission despite its hearsay character." (*People v. Duarte* (2000) 24 Cal.4th 603, 610–611.)

Lacsina's statement satisfies these criteria. First, in a hearing outside the presence of the jury, Lacsina invoked his Fifth Amendment right against self-incrimination to all questions in Meier's case. Doing so rendered him unavailable. (*People v. Brown, supra*, 31 Cal.4th at p. 535.) Second, by admitting he completed a burglary with Meier, Lacsina made a declaration

against his penal interest. (*People v. McDaniel, supra,* 12 Cal.5th at p. 132.) Third, Lacsina's statement was not self-serving, nor did it appear to shift the bulk of the responsibility to another. (*People v. Grimes* (2016) 1 Cal.5th 698, 714–715.) Rather, it inculpated himself. His statement was thus " 'sufficiently reliable to warrant admission despite its hearsay character' " — a reasonable man in Lacsina's position would not have made the inculpatory statements unless he believed the statement was true. (*Brown*, at p. 535; *Grimes*, at p. 716.) That the statement also implicated Meier does not render it inadmissible, contrary to Meier's unsupported assertion. Statements "by a nontestifying codefendant that implicate the defendant, even by name, may be admissible if they are disserving to the codefendant's interest and are not exculpatory, self-serving, or collateral." (*People v. Almeda* (2018) 19 Cal.App.5th 346, 364.)

Nor did the statement's admission violate Meier's right to confront witnesses under the confrontation clause. (*People v. Lopez* (2012) 55 Cal.4th 569, 576.) Under that clause, "the prosecution may not rely on 'testimonial' out-of-court statements unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination." (*Ibid*.) A testimonial statement is "sufficiently formal and made by or to a government agent during the course of a criminal investigation, for the primary purpose of preserving evidence for trial." (*People v. Ramirez* (2022) 13 Cal.5th 997, 1147.)

Lacsina's " 'casual remark' " to Matson, an acquaintance rather than an officer, was not testimonial. (*People v. Ramirez, supra,* 13 Cal.5th at p. 1147; *People v. Lopez, supra,* 55 Cal.4th at p. 581 ["out-of-court statement must have been made with some degree of formality or solemnity"].) Meier fails to identify any circumstances suggesting the statement was made during a

9

criminal investigation. Nor can he. Matson came home from the hospital and noticed Lacsina sifting through brand new sweatshirts and cigarettes in Matson's living room. Lacsina then told Matson that he and Meier committed a commercial burglary. Because it was nontestimonial, there was no confrontation clause violation by its admission.

### III.

Next, Meier contends the trial court abused its discretion by allowing an officer to testify Meier was the person in the smoke shop surveillance video. This argument is forfeited.

During the trial, an officer narrated the surveillance footage of the burglary for the jury. The officer opined the taller figure in the footage was Meier. The trial court overruled Meier's objection that the officer's statement was speculation and an improper opinion, but indicated the testimony was subject to a motion to strike. The officer later explained he previously encountered Meier while assisting in collecting his buccal DNA in July 2022, one month before the smoke shop burglary. On that occasion, he viewed Meier walking up to a door of a holding cell to get his mouth swabbed. Meier did not thereafter move to strike the officer's identification, nor did he renew his original objections.

Meier's failure to renew his objection to or move to strike the testimony forfeits the issue on appeal. (*People v. Zarazua* (2022) 85 Cal.App.5th 639, 646 [" 'when a trial court denies a motion without prejudice the matter is forfeited if not renewed' "].) Even were we to overlook the failure to preserve this issue for appellate review, Meier fails to demonstrate the ruling was arbitrary, capricious, or patently absurd, resulting in a manifest miscarriage of justice. (*People v. Jordan* (1986) 42 Cal.3d 308, 316 [abuse of discretion

10

standard of review]; *People v. Crittenden* (1994) 9 Cal.4th 83, 146 [appellate court may exercise discretion to consider forfeited issues].)

Lay witnesses may proffer "opinion testimony if it is rationally based on the witness's perception and helpful to a clear understanding of the witness's testimony." (*People v. Leon* (2015) 61 Cal.4th 569, 601; Evid. Code, § 800.) Nonexperts may properly testify about the identity of a person from surveillance footage. (*Leon*, at p. 601.) This testimony is admissible "where the witness has personal knowledge of the defendant's appearance at or before the time the photo was taken and [the] testimony aids the trier of fact in determining the crucial identity issue." (*People v. Ingle* (1986) 178 Cal.App.3d 505, 513.)

The officer here had personal knowledge of Meier's appearance before viewing the surveillance footage. The officer explained he previously encountered Meier — one month before the burglary — when collecting a buccal DNA sample from him for a different investigation. Moreover, the officer's lay opinion was helpful to the jury. The surveillance footage "was not a clear depiction of the subject," who was wearing a mask to conceal his identity. (*People v. Mixon* (1982) 129 Cal.App.3d 118, 131.) Under these circumstances, opinion testimony by the officer who had knowledge of Meier's appearance based on his own perception "at or before the time the crime occurred is admissible on the issue of identity." (*People v. Ingle, supra*, 178 Cal.App.3d at p. 513.)

To the extent Meier suggests the officer had limited personal knowledge of him before the crime, rendering his identification inadmissible, we disagree. "Questions about the extent of [the officer's] familiarity with [Meier's] appearance went to the weight, not the admissibility, of his testimony." (*People v. Leon, supra*, 61 Cal.4th at p. 601.) And *People v.*

11

*Rouston* (2024) 99 Cal.App.5th 997 — finding inadmissible a gang expert's identification of defendant as a shooter based entirely on the statements made by a third-party witness — does not assist Meier. (*Id.* at p. 1011.) The officer here did not testify as an expert witness, and he based his identification on his own prior encounter with Meier. Admitting this testimony was not an abuse of discretion.

## IV.

Finally, Meier contends the cumulative effect of errors deprived him of due process and a fair trial. (*People v. Cunningham* (2001) 25 Cal.4th 926, 1009 [multiple trial errors, while individually harmless, " 'may in some circumstances rise by accretion to the level of reversible and prejudicial error' "].) There were no errors, and reversal is unwarranted.

## DISPOSITION

The judgment is affirmed.

_____

RODRÍGUEZ, J.


WE CONCUR:


_____

FUJISAKI, Acting P. J.


_____

PETROU, J.


A167084; *P. v. Meier*