Filed 11/19/20  P. v. Breed CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RICHARD GARY BREED,<br><br>    Defendant and Appellant. | E073674<br><br>(Super.Ct.No. FVI17000198)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Bryan K. Stodghill, Judge.  Affirmed.

Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and Teresa Torreblanca, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Richard Gary Breed of multiple sex offenses against his granddaughter.  He argues that the trial court erred by admitting his interview with law

enforcement because his *Miranda* waiver was involuntary.[1] He also argues that the court erred by refusing to provide a hearing-impaired juror with a transcript of the interview during jury deliberations. We conclude that both arguments lack merit, and we therefore affirm.

## BACKGROUND

Breed's granddaughter lived with him and was around five or six years old when he began sexually abusing her. On multiple occasions, he anally or vaginally penetrated her with his penis, orally copulated her, or touched her genital area with his hand. He also tried to make her orally copulate him and took a photo of her genital area. After several years of abuse, Breed's granddaughter disclosed the abuse to her mother.

The jury convicted Breed of one count of oral copulation or sexual penetration with a child age 10 or younger, two counts of lewd act on a child under age 14, one count of sexual intercourse or sodomy with a child age 10 or younger, and one count of possession of child pornography. (Pen. Code, §§ 288, subd. (a), 288.7, subds. (a)-(b), 311.11, subd. (a); unlabeled statutory citations refer to the Penal Code.)

The trial court sentenced Breed to a total indeterminate term of 40 years to life in prison and a concurrent determinate term of 13 years in prison.

---

[1] *Miranda v. Arizona* (1966) 384 U.S. 436.

2

DISCUSSION

## I. Miranda *Waiver*

Breed argues that the trial court erred by admitting his interview with law enforcement because the officers' conduct rendered his *Miranda* waiver involuntary. Breed contends that, under *People v. Honeycutt* (1977) 20 Cal.3d 150 (*Honeycutt*), the officers used "[i]mproper 'softening-up'" techniques. The People argue that Breed forfeited the contention by failing to object on that specific ground in the trial court. Regardless of whether Breed forfeited the argument, the argument is meritless.

### A. *Background*

Before trial, the court held a hearing under Evidence Code section 402 to decide whether to admit Breed's interview with the investigating detective. The parties adduced the following facts at that hearing.

According to the investigating detective, Breed refused to speak with the deputy who transported him to the sheriff's station. Breed was arrested, and the detective attempted to interview Breed the day after his arrest. Breed was angry, hostile, and refused to speak to the detective. The detective offered several times to read Breed his *Miranda* rights, but Breed continued to insist that he did not want to speak to the detective. Breed was taken to a holding cell at the jail.

The next day, Breed's wife called and left a message. The deputy on duty asked Breed if he wanted to speak to his wife, and Breed said that he did. The deputy escorted Breed to the phone and stood next to him while he called his wife. During the call, the deputy heard a woman on the other end say, "'Tell the truth.'" Breed was crying and

responded, "'I'm sorry.'" When the call ended, the deputy asked Breed if he wanted to talk to anybody, including the detective. Breed said that he wanted to talk to the detective. The detective advised Breed of his *Miranda* rights, and Breed waived them. During the interview that followed, Breed admitted to orally copulating his granddaughter, touching her genital area with his fingers, and making her rub his penis, but he denied having intercourse with her.

According to Breed, the detective and deputies tried to interview him several times before he finally talked to the detective. After four attempts, one of the deputies said that if Breed told "them something, this will go away." Breed interpreted that to mean that the questioning and "harassment" would stop. He spoke with the detective because the deputy said the questioning would stop. It had nothing to do with a conversation with his wife. But he was concerned about her; she had several serious medical conditions, and he was her sole caregiver.

Breed argued that his *Miranda* waiver was not voluntary or intelligent under the circumstances. He asserted that he was distraught, concerned about his wife, and "broken down" after two days in custody and numerous attempts to interrogate him. The court found that Breed's waiver was knowing and voluntary and ruled that his interview with the detective was admissible.

B. *Analysis*

To be valid, a defendant's waiver of *Miranda* rights must be voluntary, knowing, and intelligent. (*Miranda*, 384 U.S. at pp. 444-445, 479.) In reviewing the trial court's decision on a motion to suppress, we review the trial court's resolution of disputed facts

4

for substantial evidence. (*People v. Weaver* (2001) 26 Cal.4th 876, 918.) But we independently determine whether the facts show a *Miranda* violation. (*Ibid.*)

Breed's substantial evidence challenge is based entirely on our Supreme Court's decision in *Honeycutt*. In that case, two detectives attempted to interrogate Honeycutt. (*Honeycutt*, *supra*, 20 Cal.3d at p. 158.) Honeycutt was hostile to the first detective, and that detective left the room. (*Ibid.*) The second detective, who had known Honeycutt for approximately 10 years, spoke to Honeycutt for 30 minutes about unrelated past events and former acquaintances. (*Ibid.*) The detective also mentioned that the victim of Honeycutt's offense "had been a suspect in a homicide case and was thought to have homosexual tendencies." (*Ibid.*) The detective did not discuss Honeycutt's offense during that 30 minutes, but by the end of the conversation, Honeycutt had indicated that he would talk about the offense. (*Ibid.*) Later, the detective advised Honeycutt of his *Miranda* rights, and Honeycutt waived them. (*Id.* at p. 159.) He then confessed to beating and stabbing the victim. (*Ibid.*)

The Supreme Court noted that the detective had persuaded Honeycutt to waive his *Miranda* rights before the detective had even explained them. (*Honeycutt*, *supra*, 20 Cal.3d at p. 159.) The "critical question" was thus "what effect failure to give a timely *Miranda* warning has on the voluntariness of a decision to waive which is induced prior to the *Miranda* admonitions." (*Ibid.*) The court held: "When the waiver results from a clever softening-up of a defendant through disparagement of the victim and ingratiating conversation, the subsequent decision to waive without a *Miranda* warning must be deemed to be involuntary for the same reason that an incriminating statement made under

5

police interrogation without a *Miranda* warning is deemed to be involuntary." (*Id*. at pp. 160-161.) The court concluded that the trial court had erred by refusing to suppress Honeycutt's statements to the detective. (*Id.* at p. 161.)

Since *Honeycutt*, the Supreme Court has repeatedly distinguished the case and refused to extend its holding beyond its unique facts. (*People v. Krebs* (2019) 8 Cal.5th 265, 306-307 (*Krebs*); *People v. Molano* (2019) 7 Cal.5th 620, 662-663; *People v. Scott* (2011) 52 Cal.4th 452, 478; *People v. Gurule* (2002) 28 Cal.4th 557, 602; *People v. Kelly* (1990) 51 Cal.3d 931, 954; *People v. Jackson* (1980) 28 Cal.3d 264, 298, disapproved on another ground by *People v. Cromer* (2001) 24 Cal.4th 889, 901, fn. 3.) The "'two salient features of *Honeycutt*'" were "(1) an interrogating officer who had a prior relationship with the defendant and who sought to 'ingratiate' himself 'by discussing "unrelated past events and former acquaintances"' and (2) the officer disparaging the victim." (*Krebs*, *supra*, at p. 306.) In the absence of those features, reliance on *Honeycutt* is misplaced. (*Id.* at pp. 306-307; *People v. Scott*, *supra*, at p. 478.)

The circumstances of Breed's *Miranda* waiver are materially different from those in *Honeycutt*. The officers involved did not have a preexisting relationship with Breed, they did not try to ingratiate themselves with him by engaging in extended conversation about unrelated matters, and they did not disparage his granddaughter. Accordingly, no improper "softening-up" occurred. Breed claims that *Honeycutt* controls because the officers ingratiated themselves with Breed by allowing him to call his wife. But *Honeycutt* does not stand for the broad proposition that any arguable kindness toward the

6

defendant renders a subsequent *Miranda* waiver involuntary. "*Honeycutt* has been limited to its facts." (*Krebs*, *supra*, 8 Cal.5th at p. 306.)

The investigating detective's testimony constitutes substantial evidence of the facts to which he testified, and Breed's *Miranda* waiver was voluntary on those facts. Apart from his reliance on *Honeycutt*, Breed does not argue to the contrary.

In sum, Breed fails to demonstrate that his *Miranda* waiver was involuntary. He therefore has not demonstrated that the court erred by admitting his interview with the detective.

## II. *Hearing-Impaired Juror's Request for a Transcript*

The People gave the jury transcripts of Breed's interview with the detective when the video recording was played during trial. During jury deliberations, the foreperson sent a note requesting the transcript of Breed's interview because a hearing-impaired juror was "having audio issues." Breed argues that the trial court erred by refusing to provide the transcript. The argument lacks merit.

### A. *Background*

In response to the foreperson's note, the People did not object to the court providing the requested transcript, but defense counsel objected. Counsel argued that the court had not admitted the transcript into evidence and that the jurors needed to use the video recording to determine what Breed said. The court suggested that it could provide an assisted listening device to the juror in question, and the bailiff informed the court that the juror already had the device in the jury room. The bailiff and the court also noted that the juror had used the listening device throughout trial.

7

The court responded to the jury that the video recording was the evidence of the interview, the transcript was not in evidence, and the court could not provide the transcript. The court also said that it could provide a listening device or "perhaps better speakers" to review the evidence.

The bailiff delivered the court's written response to the jury and returned with some information from the hearing-impaired juror. The juror conveyed that "she could hear but she was having problems making everything out" because of the different pitches in Breed's and the detective's voices. The People asked the court to question the juror to clarify whether she could hear all of the evidence. Defense counsel stated: "I would submit with the Court's position at this point."

After the jury had received the court's response and had been deliberating for about an hour, the court summoned the jury to the courtroom. The hearing-impaired juror confirmed that she had been using the listening device throughout trial. The court asked whether she could hear the recording of the interview. The juror replied: "I was able to put the device closer to the speaker and adjust the sound, and it did help yes, and it's just that particular audio. Everything else was fine." The court asked whether there was anything else the court could do to help her. The juror responded: "No. It was just that unfortunately it picks up the tones very high, and so when the higher tones, when [the detective] was speaking, I could hear him clearly and this particular tape the defendant was very low and so there's really nothing that can be adjusted. They all tried really hard to get it fixed but it helped when I held it closer." The court concluded by

8

asking whether the juror was "able to deliberate and consider the evidence," and the juror said, "Yes."

After the jury left the courtroom, the court explained to the parties that it had researched the issue, and it had found case law indicating that the court could send the transcript to the jury room with a limiting instruction. But the court believed that the juror's issue had been resolved and that such a step was unnecessary at that point. Neither party objected to this approach.

The jury was still deliberating several days later. The People asked the court to question the hearing-impaired juror again to clarify whether she could hear all of the trial testimony. The People noted that the court had given the juror an enhanced listening device before questioning her about her ability to hear the recording. But the People were concerned about her ability to hear the trial testimony, which occurred before she had the enhanced device. The court observed that it had "upgrade[d] some of the listening equipment" but had not specifically asked whether the juror could hear the earlier testimony, so it agreed to question the juror on that point. The juror indicated that she did not have any problem hearing the evidence during trial.

B. *Analysis*

As a threshold matter, Breed forfeited the argument that the court erred by refusing to provide the transcript. The doctrine of invited error prevents the defendant from obtaining a reversal on appeal when the trial court erred at his or her request. (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 49.) The doctrine applies when defense counsel's affirmative actions show that counsel induced the error for tactical

9

reasons and not because of ignorance or mistake. (*Ibid.*) Under those circumstances, the defendant forfeits the claim of error on appeal, "regardless of its merit." (*People v. Williams* (2008) 43 Cal.4th 584, 629.)

Defense counsel objected to the court giving the juror a transcript of Breed's interview, and the court adopted defense counsel's reasoning in denying the request for a transcript. Counsel had a clear tactical reason for objecting—the transcript showed Breed unequivocally confessing to several of the sex offenses at issue. Consequently, if the court erred, it was at Breed's invitation, and he has forfeited the claim of error. Moreover, even if Breed did not invite the claimed error, he failed to object after the court questioned the juror and determined that the issue had been resolved. This too constituted a forfeiture. (*People v. Fuiava* (2012) 53 Cal.4th 622, 653 ["Defendant forfeited this claim by failing to raise this issue below, when the trial court could have remedied the alleged shortcoming"].)

In any event, the court did not err. The court is required to provide hearing-impaired jurors with "a functioning assistive listening system or a computer-aided transcription system" upon their request. (Civ. Code, § 54.8, subds. (a), (g).) The record discloses that the court gave the juror an assisted listening device for use during the trial, and it upgraded that device during jury deliberations. The juror indicated that those devices allowed her to hear the evidence, including the recording of Breed's interview with law enforcement. The record does not support Breed's assertions that the juror failed to hear "crucial testimony" (his confession) and that the assisted listening device "was not functioning properly." When questioned by the court after receiving the

10

upgraded listening device, the juror stated that she was able to hear by moving the device closer to the speakers and adjusting the sound.

For these reasons, Breed's argument that the court erred by not providing the transcript is meritless.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
J.

We concur:

MILLER
Acting P. J.
RAPHAEL
J.

11